Scott D. LAVERTY et al.

v.

TOWN OF BRUNSWICK et al.

Supreme Judicial Court of Maine.

Argued May 2, 1991.
Decided Aug. 6, 1991.

Orville T. Ranger (orally), Ranger, Fessenden, & Copeland, P.A., Brunswick, for plaintiff.

Ronald P. Lebel (orally), Paul C. Fournier, Rocheleau, Fournier & Lebel, Lewiston, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

ROBERTS, Justice.

Scott D. Laverty and Linda W. Laverty appeal from a judgment of the Superior Court (Cumberland County, *Perkins, J.*) affirming a decision of the Brunswick Zoning Board of Appeals (ZBA) that certain permits previously obtained by the Lavertys had expired and that the Lavertys would have to reapply for the permits before constructing a golf driving range on property they owned in the Town of Brunswick. We affirm.

In September 1986, the Lavertys agreed to purchase a 35 acre parcel of land, subject to final approval by the Brunswick Planning Board, for purpose of constructing a golf driving range. Because the lot had only 31 feet of road frontage, it was necessary for the ZBA to grant a variance before work could begin on the project. The variance was applied for in March 1987 and was vigorously contested by Linda and William McCullough who owned property abutting the proposed driving range. Nevertheless, the ZBA granted the variance and the McCulloughs appealed to the Superior Court.

In May 1987, while the first appeal was pending, the McCulloughs filed a new appeal with the ZBA stating that the Code Enforcement Officer (CEO) had wrongly determined that the golf driving range was a private recreational facility and therefore a use permitted as a matter of right in that zone. The ZBA affirmed the decision of the CEO, and the McCulloughs, in turn, filed an additional appeal, which was consolidated with the earlier appeal. While the appeals were pending, the Lavertys proceeded with the site plan review process making five appearances before the Planning Board between May and October 1987, during which they received vigorous opposition from the McCulloughs and other persons who lived in the neighborhood. In October, 1987, the board granted site plan approval for the project by a vote of 4 to 1.

The consolidated appeals were heard by the court in October 1987. The court upheld the driving range as a permitted use under the zoning ordinance but remanded the decision on the frontage variance back to the ZBA for additional findings.

While the remand was pending, the Brunswick Town Council enacted two amendments to the zoning ordinance that became effective on June 1, 1988. The first amendment, Section 202.25, stated that:

> For purpose of this ordinance, golf driving ranges shall not exist as principal uses and shall only be considered as an accessory use to a regulation golf course.

The second amendment, Section 203.7B, purported to grandfather existing lots of record from the zoning ordinance frontage requirements. The Lavertys took the position that they could avail themselves of the amendment grandfathering lots of record from the frontage requirement and that this would eliminate the necessity for a further hearing by the ZBA. Accordingly, the Lavertys filed motions for summary judgment seeking a determination that the amendment of the zoning ordinance grandfathered the Lavertys' lot and eliminated the necessity for rehearing by the ZBA of the request for a frontage variance. By order dated September 2, 1988, the court denied both motions for lack of jurisdiction. As a result, on September 26, 1988 the building permit was finally issued. Meanwhile, on September 7, 1988, a lighting variance that had been issued by the ZBA to the Lavertys on September 8, 1987, expired pursuant to the express provisions of the zoning ordinance. A little over one month later, the site plan approval also expired. The Lavertys did not attempt to get any form of extension from the town for either the variance or the site plan approval.

In August 1989, the Lavertys first had the site surveyed for the driving range. The Lavertys subsequently had the driveway area excavated and filled so that construction equipment could enter the property. In furtherance of their construction plan, they also had all trees cut and cleared

an entire area of 14 acres in the middle of the lot.

In October, 1989, the McCulloughs' counsel wrote a letter to the CEO, claiming among other things, that the building permit issued to the Lavertys on September 26, 1988 was void because the building permit, the lighting variance and the site plan approval had all expired. These contentions were rejected on November 6, 1989, by the attorney for the town. By letter dated November 8, 1989, the CEO wrote to the McCulloughs and stated that the attorney's letter constituted his response to their complaint as well. Accordingly, the McCulloughs filed an administrative appeal to the ZBA contesting both the interpretation and application of the ordinance by the CEO and his refusal to stop development on the Lavertys' project.

The ZBA held public hearings on the appeal in January and February, 1990. At the completion of these hearings, the ZBA overruled the interpretation and application of the ordinance by the CEO. The Lavertys then filed an appeal in the Superior Court.

## I.

■ The first issue the Lavertys raise on appeal is that the McCulloughs had no standing to contest their actions or those of the town. According to the Lavertys, the McCulloughs introduced no evidence that would show any devaluation of their property or harm in their enjoyment of the property. We disagree.

In the past we have held that "a sufficient potential for particularized injury flowing from increased public use of ... premises [meets] our requirement for standing." *Noyes v. City of Bangor*, 540 A.2d 1110, 1110 n. 1 (Me.1988). The mere fact that the Lavertys proposed to place a commercial entity on their property subjected the McCulloughs to the threat of "increased public use" of the area surrounding their home, even though their particular premises were not subject to increased use. This was sufficient to give them standing to bring this action.

■ The Lavertys also point out that the appeal necessarily challenges only the Lavertys' delay in commencing their project. According to the Lavertys, a mere showing of delay is not sufficient to establish that the McCulloughs are aggrieved and section 703.1 of the ordinance provides that a person must be "aggrieved" to appeal to the ZBA.

The Lavertys' argument that the McCulloughs were not "aggrieved" by their delay in beginning construction is irrelevant. The issue here is whether the McCulloughs were aggrieved by the ruling of the CEO not whether they were aggrieved by any delay. In this case the fact that the McCulloughs might have suffered reduced enjoyment of their property as a result of the ruling created aggrievement and thus standing to pursue their appeal.

## II.

■ The Lavertys also argue that the findings of the ZBA were inadequate as a matter of law. According to the Lavertys, 30–A M.R.S.A. § 2691(3)(E) (Pamph.1990) required the ZBA to make much more complete statements of its findings of fact and conclusions of law than it made. The only record of the ZBA's decision is a transcript of its deliberations. The Lavertys argue that this transcript is not only ambiguous but shows a misunderstanding of the law.

30–A M.R.S.A. § 2691(3)(E) (Pamph.1990) states that "all decisions of zoning boards shall include statements of findings and conclusions, upon all material issues of fact, law or discretion presented...." We find the ZBA's discussion a fully adequate record upon which to review the claims of the Lavertys. The ZBA's discussion indicated that all five board members noted that the Lavertys had exceeded the time limits on these building permits and four of the five board members explicitly stated their belief that the Lavertys could have asked for extensions and, in failing to do so, exceeded the time limits on the building permit as well as the site plan approvals and lighting variances. This, in and of itself, was enough to overturn the ruling of

the CEO. *Putnam v. Town of Hampden,* 495 A.2d 785, 788 (Me.1985).

### III.

■ The Lavertys also challenge the court's ruling, claiming that it was ambiguous. The court upheld the ruling of the ZBA, stating:

> This is a Rule 80B, M.R.Civ.P. appeal of a February 13, 1990 decision of the Brunswick Zoning Board of Appeals which amended the Code Enforcement Officer's interpretation of certain ordinance provisions. In essence, the ZBA concluded that certain permits previously obtained by the Lavertys had expired and that they would have to reapply for the permits before constructing their planned golf driving range.

The essence of the Lavertys' argument seems to be that the court's use of the term "permits" is ambiguous in that the lighting variance, the site plan approval, and the building permit were all at issue. From the context of this case, the court's use of the term "permits" clearly described the lighting variance, the site plan approval and the building permit. The court's statement is sufficiently clear to inform the parties and us of the nature and ground of the court's decision.

### IV.

■ The Lavertys also argue that even if the court had decided that they must go back to the Planning Board to seek an extension of the site plan approval, they should have been given credit for the time they were held up by the litigation initiated in the McCulloughs' complaint. It is undisputed that the McCulloughs' litigation caused delay and actually prevented the Lavertys from beginning work during the pendency of their site plan approval and lighting variance. Nevertheless, the Lavertys failed to seek an extension as permitted in section 510 of the ordinance and thus failed to meet the deadlines set forth for their site plan approval, lighting variance and building permit set forth in the ordinance.

■ We have addressed the issue of litigation credits in the recent case of *Cobbossee Development Group v. Town of Winthrop,* 585 A.2d 190, 194 (Me.1991). In *Cobbossee* we stated that appeal of

> an agency action does not stay an action automatically ... [i]t gives persons a mechanism to test a government decision but, by imposing time limits to appeal and not automatically staying the action being reviewed, it recognizes the countervailing policy that the administration of government should not be unnecessarily impeded.

*Id.* at 194. In other words, a party is not entitled to litigation credit for time during which appeals are pending. The Lavertys' means of obtaining the "credit" for the time they were held up in litigation with the McCulloughs was clearly set forth in the extension provision of the ordinance. The Lavertys failed to avail themselves of this statutory protection and cannot now complain.

The entry is:

Judgment affirmed.

All concurring.