STATE OF MAINE
Knox, S.S., Clerks Office
SUPERIOR COURT

FEB 12 2003

RECEIVED AND FILED
Gillette, Clerk

STATE OF MAINE

KNOX, ss.

DWIGHT L. OVERLOCK
d/b/a OVERLOCK
EXCAVATION and
SHERYL OVERLOCK,

    Plaintiffs

v.

INHABITANTS OF THE
TOWN OF THOMASTON,

    Defendant

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-02-004

JRA -KNO- 2/12/2003

DONALD L. GARBRECHT
LAW LIBRARY

FEB 14 2003

DECISION AND ORDER

This matter is before the court on the defendant's motion to dismiss the plaintiffs' M.R. Civ. P. 80B complaint. The defendant, Town of Thomaston ("town"), claims in its motion that the plaintiffs, Dwight L. Overlock, d/b/a Overlock Excavation, and Sheryl Overlock (Overlocks), failed to file an appeal from a decision of the town's Board of Appeals ("board") in a timely way so that this court lacks jurisdiction to consider the case. The Overlocks contest the motion; it has been briefed and argued, and is in order for disposition.

Before addressing the merits of the parties' arguments, it is first important to recite the history of this case which is not in dispute.

According to the complaint and exhibit A attached to that pleading, Peter Surek, the town's code enforcement officer (CEO), issued a cease and desist order to the Overlocks on October 15, 2001. That order directed the Overlocks to stop any further quarry operations because they constituted a change of use which would not be allowed in the zoning district where the Overlocks' current gravel pit operation was

located.  According to the complaint, ¶ 18, and the Answer, ¶ 21, the Overlocks appealed this cease and desist order to the board on November 27, 2001.[1]

On December 11, 2001, the board convened to consider the Overlocks' appeal. According to the transcript of that proceeding, the Overlocks' attorneys, the board's legal counsel, the intervenor's counsel, the CEO, and all five members of the board were present at this event.  At its conclusion, upon the motion of one member of the board, and the second of another, the board unanimously voted to uphold the CEO's decision and deny the Overlocks' appeal.

On December 20, 2001, the members of the board signed an order which made various factual and legal conclusions concerning the Overlocks' appeal and memorialized their previous vote which had denied the appeal.[2]

On January 31, 2002, the Overlocks filed their complaint with this court, asking for judicial review of the board's action.

By its motion, the town claims that the complaint was filed too late.  In support of this argument, it cites the court to the provisions of 30-A M.R.S.A. § 2691(3)(G) which reads in part, "Any party may take an appeal, within 45 days of *the date of the vote on the original decision,* to Superior Court from any order, relief or denial in accordance with the Maine Rules of Civil Procedure, Rule 80B . . . ." (emphasis supplied).  Thus, in the defendant's view, because "the vote on the original decision" occurred on December 11, 2001, the appeal from that event had to have been filed 45 days later, i.e., on or before

---

[1]  The text of Surek's notice advises the Overlocks that the town's land use ordinance provides for a 30-day appeal period.  This representation is confirmed by the record.  *See* R-10, Ch. 7 Thomaston Land Use and Development Ordinance (amend. 6/19/01), p. 29, § 705.3.1.  It therefore appears that the Overlocks' appeal to the board was late.  Neither party addresses this apparent misstep in the appellate process.

[2]  The plaintiffs in their memorandum advise that the board mailed its December 20 order on December 21 which was then received by the plaintiffs' counsel on December 26, 2001.

2

January 25, 2002. Because, the defendant says, the appeal was filed on January 31, 2002, it is six days late and may not, therefore, be considered by this court.

The plaintiffs argue that this interpretation of 30-A M.R.S.A. § 2691(3)(G) is only partly correct. They agree that the appeal period is 45 days, but claim that it began to run on December 20, 2001, rather than on December 11. In support of this argument they point out that the appeal period is initiated by a decision and that all decisions "must include a statement of findings and conclusions, as well as the reasons or basis for the findings and conclusions, upon all the material issues of fact, law or discretion presented and the appropriate order, relief or denial of relief." 30-A M.R.S.A. § 2691(3)(E). Thus, because "the decision" of December 11, 2001, did not, in the plaintiffs' view, contain all these elements, it did not qualify as a decision from which an appeal could be taken. Instead, they say, such a decision was not produced until December 20 when the board articulated the reasons for its action as section 2691(3)(E) requires. Accordingly, the appeal period began on that date and the complaint filed with this court on January 31, 2002, would be within the prescribed 45 days and, therefore, timely.

This exposition of the dispute can be reduced to this question -- when did the appeal period begin to run in this case – on December 11, 2001 when the the board voted, or on December 20, 2001, when they provided a detailed explanation of their action? In the court's view, it is the former date.

The most compelling argument which favors this result stems from the language of the statute quoted, *infra*; that is, that an appeal is to be taken within 45 days "of the vote on the original decision." 30-A M.R.S.A. § 2691(3)(G). This can only mean the vote taken on December 11 because that is the only date a vote was taken, but, more importantly, that was the date the decision denying the Overlocks' appeal was

3

"originally" made. In contrast, no vote was taken on December 20, and the decision that day was not "original," i.e., "preceding all others in time." *See* "Original," WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY, 829 (1984). Instead, the December 20 order of the board was supplemental in nature in that it provided the confirmation of its decision of December 11. This is corroborated by the "Agenda" for December 20 which advises that the action that night was to "Review and approve the Findings of Fact . . . regarding the Administrative Appeal of the Code Enforcement Officers order on December 11, 2001." R. 7.

The conclusion reached here is similar to the decision of the Law Court in *Vachon v. Town of Kennebunk*, 499 A.2d 140, 141-42 (Me. 1985), a case which bears considerable resemblance to this matter. As to that case, the statute then in effect, 30 M.R.S.A. § 2411(3)(F), provided that an appeal was to be taken within 30 days after a board decision was "rendered." In the view of the Law Court, this meant the date the board publicly cast its vote rather than the date on which the appellant had received the board's letter notifying him of its decision. According to *Vachon*, if the Legislature had intended to identify a different event to mark the time at which the appeal period would begin to run, it could have done so just as it had, for example, when it set the appeal period after a decision of a state agency.

So, too, here, the Legislature has selected a specific, identifiable event, namely the vote on the original decision, as the occasion on which the appeal period begins. Had it wished to select a different event, such as the date a board supplements or confirms its decision with further findings prescribed by subparagraph E of section 2691(3), it could have done so.

Moreover, just as in *Vachon*, the public hearing on an appeal at which the "original decision is made" is an event at which all parties are present, and "that time is

4

easily determined and precisely fixed and . . . all parties to the public proceeding will ordinarily know of the Board's public vote at the time it is taken." *Id.* 499 A.2d at 142. Nothing in the record suggests that the same would be true as to the board meeting of December 20, 2001. Thus, the action on December 11, which all would understand to be a public vote on the merits of the Overlocks' appeal, represented a decision on that appeal which could then be appealed by "any party" to this court. 30-A M.R.S.A. § 2691(3)(G).

Next, to accept the plaintiffs' interpretation of these provisions would require the court to discount the importance of the word "original" which modifies "decision" in subparagraph G of subsection 3. That word was added to its text by legislative action via P.L. 1991, ch. 234. It must be assumed that the Legislature had a purpose in doing so and the added word "must be given [its] plain, common and ordinary meaning." *Murphy v. Board of Environmental Protection*, 615 A.2d 255, 258 (Me. 1992). Such a purpose could only have been to clarify and better define the word "decision," which "original" modifies, so that it would be understood what board action would trigger the running of the appeal period. In the context of the statutorily prescribed procedures for municipal boards of appeal and the facts of this case, the word "original" must therefore mean, as noted *infra*, the decision in the case which preceded all others, an event which may be easily determined by a party who wishes to appeal. This is further defined as the occasion on which the vote was taken by virtue of the same amendment to section 2691 which added the word "original." *See* P.L. 1991, ch. 234.

Moreover, the applicable statute allows such an original decision to be reconsidered, and therefore modified, enlarged, or changed, but that such action must occur within 30 days of the seminal event of "the vote on the original decision." 30-A M.R.S.A. § 2691(3)(F). Thus, even if the "original decision" is changed or modified 30

5

days after it is made, the appeal period begins to run on the same occasion – when the vote was taken on the "original," i.e., first, decision. This allows an aggrieved party an extra two weeks to file his appeal after the original decision was made. *Forbes v. Town of Southwest Harbor*, 2001 ME 9, ¶ 12, 763 A.2d 1183, 1187.

This construct of the relevant provisions of the statute notwithstanding, the plaintiffs assert that the "original decision" of December 11 does not qualify as a decision because it does not include "a statement of findings and conclusions, as well as the reasons or basis for the findings and conclusions upon all the material issues of fact, law or discretion presented and the appropriate order, relief or denial of relief." 30-A M.R.S.A. § 2691(3)(E). The record of the proceedings of December 11, however, demonstrates that the board did adhere to these requirements. R. 4, pp. 84-92. Each member either expressed how the Overlocks' operation violated the town ordinance, or why each believed it was a quarry, or why each found that the activities the Overlocks conducted amounted to a change of use. Having made these findings on the topics relevant to their consideration, and interpreted their ordinance in this regard, the board entered an appropriate order which denied the plaintiffs any relief. In the court's view these actions satisfy the prescription for the content of "a decision" from which an appeal could be taken.[3] *Laverty v. Town of Brunswick*, 595 A.2d 444, 446 (Me. 1991) (board's discussion on permittee's exceeding time limit for construction a sufficient record). The fact that the board later memorialized their findings in a more expansive order on December 20 does not affect the necessity of calculating the running of the

---

[3] If a petitioner before a board believed that the original decision was incomplete because it did not satisfy the elements of subsection 3(E), the remedy would be a request for reconsideration via subsection 3(F). That action, however, as discussed, *infra*, would nevertheless not change the significance of the event of the vote on the original decision which begins the time limits in section 2691.

6

appeal period from "the date of the vote on the original decision." 30-A M.R.S.A. § 2691(3)(G).

Further, even if the order of December 20 is to be considered a decision for purposes of the requirements of this law, it is not, of course, the "original decision." Instead, it is akin to a reconsidered decision, the issuance of which does not change the calculation of the appeal period. 30-A M.R.S.A. § 2691(3). Indeed, just as in *Vachon*, "a decision" issued via subsection (3)(E) is sent only to the petitioner and certain municipal officials. *Id.*, 499 A.2d at 142. Thus, only they would have notice of this event so that they could appeal from it. This, of course, would effectively negate the opportunity of other individuals, such as abutters or other interested parties, from acting to appeal a board decision. Such an application of subsection (3)(E) contradicts the obvious legislative intent that "[a]ny party may take an appeal . . . on the original decision." 30-A M.R.S.A. § 2691(3)(G). From this, the court concludes that the only way to reconcile the provisions in potential conflict here is to apply the unmistakable meaning of subsection (3)(G) and hold that it is the date of the decision first expressed by a board's vote which begins the period within which an appeal may be taken.

In reaching this conclusion, the court is mindful that the appeal of the plaintiffs may end here. However, "[a]ll statutory requirements for perfecting an appeal are jurisdictional and require strict compliance." *Rice v. Amerling,* 433 A.2d 388, 391 (Me. 1981). In the court's view the plain meaning of 30-A M.R.S.A. § 2691(3)(G), even when read with subsection (3)(E), requires the filing of an appeal 45 days from the first, i.e., "original" vote of a board on the merits of a local zoning contest. In this case that occurred on December 11, 2001, so that the appeal filed here on January 31, 2002, was not perfected in a timely fashion, and the appeal must therefore be dismissed. *Vachon v. Town of Kennebunk, id.,* 499 A.2d at 143.

7

Based on the foregoing, the clerk is to make the following entry:

Motion to Dismiss by defendant, Town of Thomaston, is GRANTED. Case is DISMISSED.

So ordered.

Dated: February 11, 2003

John R. Atwood
Justice, Superior Court

8