2007 ME 32

**Lawrence D. ROOP et al.**

v.

**CITY OF BELFAST.**

Supreme Judicial Court of Maine.

Argued: Nov. 30, 2006.
Decided: Feb. 22, 2007.

Edmond J. Bearor, Esq. (orally), Timothy A. Pease, Esq., Rudman & Winchell, LLC, Bangor, ME, for plaintiffs.

William S. Kelly, Esq. (orally), Kelly & Associates, LLC, Belfast, ME, for City of Belfast.

Terry W. Calderwood, Esq., Gibbons & Calderwood, LLP, Camden, ME, for Dana Keene.

Timothy C. Woodcock, Esq., Eaton Peabody, Bangor, ME, for First Harford Realty Corp.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

SILVER, J.

[¶ 1] Lawrence D. and Mia Roop appeal from the entry of a summary judgment in the Superior Court (Waldo County, *Mills, J.*) dismissing their suit against the City of Belfast for lack of standing. The Roops argue that they have standing to challenge the process used to amend a zoning ordinance that resulted in the rezoning of a retail district abutting the Roops' property. We agree and vacate the judgment.

## I. BACKGROUND

[¶ 2] In August of 2004, a citizens' petition was submitted to the Belfast city clerk seeking a revision of the City's existing Comprehensive Plan and Zoning Ordinance. Specifically, the petition sought to establish a Special Commercial Development District (the new district) within the Searsport Avenue Commercial District, which would allow retail structures of 200,-000 square feet. Previously, 75,000 square feet per lot was the maximum permitted. During the statutorily mandated preparation process for the proposed amendments pursuant to 30–A M.R.S. §§ 4324 and 4352 (2006), several hearings were held during which the public was able to receive information and give input regarding the proposed ordinance and comprehensive plan amendments. Notice of the hearings was published in local newspapers. The Roops and other lot owners within or abutting the proposed new district also received individual notice via U.S. mail. At the hearings, the city planner told the citizens present that, although the public would have an opportunity to comment and vote on the proposed amendments, the precise language of those amendments could not be changed. The amendments passed in a public referendum.

[¶ 3] The Roops own a four-bedroom home that they rent to a business for use as a group home. The Roops plan to move to the property once they retire. Their property is located on Searsport Avenue, within the Searsport Avenue Commercial District. As a result of the amendments to the zoning ordinance and comprehensive plan, land adjacent to the Roops' property was rezoned within the new district to allow for larger retail structures.

[¶ 4] Presently, there are no immediate plans for large-scale development in the new district; however, the parties agree

that the new district allows for increased commercial development and, therefore, increased commercial activity and traffic.

[¶ 5] After the adoption of the amendments, the Roops and the citizen group Belfast First filed a complaint for a declaratory judgment pursuant to 14 M.R.S. § 5954 (2006), seeking a declaration that the new district is invalid because the process employed to enact it violated the citizen participation requirement articulated at 30–A M.R.S. § 4324(3),[1] and because the rights in the Roops' property had been adversely affected. Thereafter, the City filed a motion to dismiss the complaint, arguing that both plaintiffs were without standing to attack the amendments. The court granted the motion as to Belfast First and ultimately granted the motion as to the Roops. The Roops filed this timely appeal.

## II.  DISCUSSION

[¶ 6] "We review the grant of a summary judgment for an error of law, viewing the evidence in the light most favorable to the party against whom the judgment has been granted." *Longley v. Knapp*, 1998 ME 142, ¶ 16, 713 A.2d 939, 944.

[¶ 7] Our standing requirement is a matter of Maine jurisprudence. Unlike the language of article III, section 2 of the United States Constitution, the Maine Constitution contains no "case or controversy" requirement. Therefore, "[o]ur standing jurisprudence is prudential, rather than constitutional." *Collins v. State*, 2000 ME. 85, ¶ 11, 750 A.2d 1257, 1261 (Calkins and Dana, JJ., concurring) (citation omitted). The basic premise underlying the doctrine of standing is to "limit access to the courts to those best suited to assert a particular claim." *Halfway House, Inc. v. City of Portland*, 670 A.2d 1377, 1380 (Me.1996). There is no set formula for determining standing. The judicial doctrine of standing "has been applied in varying contexts causing it to have a plurality of meanings." *Walsh v. City of Brewer*, 315 A.2d 200, 205 (Me.1974).

[¶ 8] In the context of disputes involving an abutting landowner, the standing threshold is minimal. *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 7, 746 A.2d 368, 371. "Because of the abutter's proximate location, a minor adverse consequence affecting the party's property, pecuniary or personal rights is all that is required for the abutting landowner to have standing." *Id.* at 371–72 (citation omitted). In *Laverty v. Town of Brunswick*, 595 A.2d 444, 446 (Me.1991), we held that the abutters had standing, notwithstanding the fact that there may

---

1. Section 4324, Responsibility for growth management, states in relevant part:

This section governs a municipality's or multimunicipal region's responsibility for the preparation or amendment of its growth management program. When procedures for the adoption of comprehensive plans and ordinances are governed by other provisions of this Title or municipal charter or ordinance, the municipality or multimunicipal region may modify the procedural requirements of this section as long as a broad range of opportunity for public comment and review is preserved.

. . . .

3. **Citizen participation.** In order to encourage citizen participation in the development of a growth management program, municipalities or multimunicipal regions may adopt growth management programs only after soliciting and considering a broad range of public review and comment. The intent of this subsection is to provide for the broad dissemination of proposals and alternatives, opportunity for written comments, open discussions, information dissemination and consideration of and response to public comments.

. . . .

not have been a decrease in the value of their property. We found that the threat of increased public use that may result from the placement of a business or commercial structure near the plaintiff's property is a sufficiently particularized injury to confer standing. *Id. In the Matter of International Paper Co., Androscoggin Mill Expansion,* 363 A.2d 235 (Me.1976), further supports our recognition that injuries other than economic harm are sufficient to confer standing. There, plaintiffs who breathed the air in the area for which International Paper received air emission and waste discharge licenses were found to have suffered a particularized injury. *Id.* at 237, 239.

[¶ 9] The factual distinction in this case is that the Roops are not challenging the approval of a specific development project or license. Rather, the Roops are challenging the validity of the process employed by the City to prepare the proposed zoning ordinance and comprehensive plan amendments.[2] Accordingly, our standing analysis must be contextually appropriate. The injury is the alleged violation of a statutorily mandated review process meant to ensure the opportunity for meaningful public participation in preparing amendments to the municipality's growth management plan.

[¶ 10] A denial of the right to meaningful participation pursuant to subsection 4324(3) is an injury that is real and present, not abstract or hypothetical. *See*

*generally Fitzgerald v. Baxter State Park Auth.,* 385 A.2d 189, 196–97 (Me.1978) (recognizing that standing can be conferred for non-economic injuries and for injuries that are widely shared). The injury is also particularized to abutting landowners. The fact that the Roops received individual notice of the public hearings is indicative of the Roops' heightened interest in having the opportunity for public participation. Clearly, the Roops are among the category of persons best suited to bring this challenge.

[¶ 11] For the foregoing reasons, we find that the court improperly granted summary judgment. The Roops provided evidence of an injury to their right to participate pursuant to subsection 4324(3). Therefore, the Roops, as citizens of Belfast owning land that abuts the new district, have standing to seek a declaratory judgment as to the validity of the process used by the City to prepare amendments to the City's zoning ordinance and comprehensive plan.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.

---

2. The City also contended at oral argument that there is no private right of action to challenge a municipality's amendment to a "[g]rowth management program," as that term is defined in 30–A M.R.S. § 4301(9) (2006) and applied in 30–A M.R.S. §§ 4311 to 4350–A (2006) (Subchapter II, Growth Management Program), in contrast to actions that test the legality of "[l]and use ordinance[s]" and "[z]oning ordinance[s]," as those terms

are defined in 30–A M.R.S. § 4301(8), (15–A) (2006) and applied in 30–A M.R.S. §§ 4351–4360 (2006) (Subchapter III, Land Use Regulation), *see, e.g., Home Builders Ass'n of Maine, Inc. v. Town of Eliot,* 2000 ME 82, ¶ 5, 750 A.2d 566, 569. Because this issue was not raised before the Superior Court in connection with the City's motion, we refrain from addressing it.