STATE OF MAINE
HANCOCK, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-06-4

James Silsby, Jr. et al.,
    Plaintiffs

v.

Order on Appeal

City of Ellsworth et al.,
    Defendants



Pursuant to ELLSWORTH, MAINE SUBDIVISION ORDINANCE § 16.1 (2003),

ELLSWORTH, MAINE LAND USE ORDINANCE Art. VII, §9 (2006) and M.RCiv.P. 80 B, the

plaintiffs appeal from a decision issued by the City of Ellsworth Planning Board

("Board") approving the application of Anthony Belch and Elizabeth Belch for a minor

subdivision. The project consists of the renovation of an existing structure into a three-

unit apartment building. The plaintiffs have also moved for a trial on the facts. The court

has considered the parties' written submissions on the issues presented.

**Motion for trial of the facts.**

The plaintiffs have moved for a trial of the facts. Their motion identifies three

areas that would be the subject of the prospective trial: first, the nature of nearby

residences; second, the provisions of their deeds, including restrictive covenants

prohibiting commercial uses; and third, a conflict of interest affecting one of the Board

members.

Rule 80B(d) requires that when a party files a motion for trial of the facts, the

motion must be accompanied by

> a detailed statement, in the nature of an offer of proof, of the evidence that the
> party intends to introduce at trial. That statement shall be sufficient to permit the
> court to make a proper determination as to whether any trial of the facts as
> presented in the motion and offer of proof is appropriate under this rule and if so
> to what extent.

1

M.R.Civ.P. 80B(d).

A trial of the facts under M.R.Civ.P. 80B(d) is designed to permit an aggrieved party the opportunity to develop evidence that is germane to the appeal and that *could not* have been made part of a conventional record on appeal. *See Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 9, 743 A.2d 237, 240 ("Rule 80B(d) is not intended to allow the reviewing court to retry the facts that were presented to the governmental decisionmaker. . . .").

Here, the court concludes that the motion adequately described the prospective trial evidence on the first two issues. Although the plaintiffs' descriptions of that evidence in the motion are brief, they include the substantive information that the plaintiffs propose to develop at a trial. However, evidence of the nature of other dwellings in the neighborhood and evidence of the substantive provisions of relevant deeds are matters that certainly could have been developed at the hearing held by the Board. These issues are qualitatively different from, for example, allegations of bias, where the supporting evidence is likely to be extrinsic to the administrative record. *See Baker's Table*, 2000 ME 7, ¶ 9, 743 A.2d at 241. Therefore, the plaintiffs at bar have not demonstrated that a trial is proper on their first two points identified in their motion.

The third issue for trial – an alleged conflict of interest – has not been presented in a way that complies with the specificity requirements of rule 80B(d). The only factual material included in the motion is a claim that the challenged Board member should have recused himself from voting on the Belches' application because of an unidentified conflict of interest. Contemporaneous with the motion for trial of the facts, the plaintiffs filed a motion to amend their complaint to include an additional count alleging that the Board's decision was "illegal" because a voting member had a conflict of interest. In that motion to amend, the plaintiffs included a bit more information than they chose to set out in the motion for trial of the facts. In the pleading, they alleged at a July 2006 Board meeting (subsequent to the May and June 2006 meetings, when the Board considered and approved the Belches' application), the subject Board member recused himself. The plaintiffs attempt to connect the July meeting to the ones involving the Belches' application, by noting that the proceeding where the member recused himself in July involved "the same property, project and developers" as in the case at bar. Then, two

2

weeks after the plaintiffs filed the motion to amend their complaint, and several days after the Belches filed an objection to that motion, the plaintiffs filed an actual amended complaint, which included a separate count (count 3) alleging the conflict of interest.

For purposes of adjudicating the motion for trial of the facts on the alleged conflict of interest, the court assumes that the information in the motion to amend may also be considered to determine if the plaintiffs have satisfied the requirements of rule 80(d) in their motion for trial of the facts. (The court, however, does not consider anything in the actual amended complaint that goes beyond the contents of the motion to amend, because the amended complaint was filed well beyond the time limitations created in rule 80B(d) and because it was filed after the Belches, at least,[1] filed their objection to the motion for trial.) Viewing the description of the basis for the conflict claim as an offer of proof, the court concludes that there is insufficient information to warrant a trial. The Board member recused in a separate proceeding more than one month after the proceedings at issue here, and the plaintiffs have not identified or suggested the basis for that decision to disqualify.

Therefore, the court denies the plaintiffs' motion for trial of the facts.

**Merits of the appeal.**

As an initial matter, the court grants the plaintiffs' motion to amend their complaint to include count 3, alleging the conflict of interest discussed above. Although the motion to amend has not been the subject of court action previously, none of the defendants objected to the motion, and they have had full opportunity to address the merits of that counts as one of the plaintiffs' arguments on appeal. Thus, the plaintiff's allegation of a conflict of interest shall be considered as one of the grounds for their appeal from the Board's approval of the subdivision application. For the reasons noted above, however, the conflict claims shall not be the subject of a court trial.

Consequently, the plaintiffs challenge the Board's decision on three grounds: first, that it did not issue notice of the hearing as required by the applicable municipal ordinance; second, that the Board's decision to approve the Belches' application was contrary to the provisions of the ordinances; and third, that the Board's decision is tainted by a member's conflict of interest.

---

[1] The City of Ellsworth did not file a response to the plaintiff's motion to amend.

The court reviews the decision of the Board "for abuse of discretion, errors of law, or findings not supported by substantial evidence in the record." *Kurlanski v. Portland Yacht Club*, 2001 ME 146, ¶ 7, 782 A.2d 783, 785 (citation and internal punctuation omitted).

The defendants make preliminary arguments in opposition to any consideration of the merits of the plaintiff's challenges to the Board's decision. First, they argue that the plaintiffs have not established that they have standing to proceed on this appeal. To establish standing, a party must have participated in the underlying municipal process and must have a particularized injury at stake. *Rowe v. City of South Portland*, 1999 ME 81, ¶ 4, 730 A.2d 673, 674. As the Law Court has held, "[t]he basic premise underlying the doctrine of standing is to limit access to the courts to those best suited to assert a particular claim. There is no set formula for determining standing. The judicial doctrine of standing has been applied in varying contexts causing it to have a plurality of meanings." *Roop v. City of Belfast*, 2007 ME 32, ¶ 7, 915 A.2d 966, 968 (citations and internal punctuation omitted). Here, the defendants acknowledge that one of the plaintiffs (Julia Winglass) lives across the street from the property that is the subject of the Belches' application. A letter in the record from one Robert Winglass, Jr. indicates that the Winglass residence in fact is directly across the street from the Belches' property. Further, the record identifies other plaintiffs as abutters. "In the context of disputes involving an abutting landowner, the standing threshold is minimal." *Id.*, ¶ 8, 915 A.2d at 968. The defendants do not argue that these plaintiffs failed to participate at the hearing. Because the record is sufficient to reveal that at least some of the plaintiffs have satisfied the dual elements amount to standing, the court concludes that they have satisfied this preliminary hurdle.

The defendants then contend that the appeal should be dismissed because, they argue, the plaintiffs did not satisfy the requirements of rule 80B(e) that govern the creation of a record on appeal. It appears that plaintiffs' counsel unilaterally gathered and filed material that is generally associated with a rule 80B record and that he did so without participation from the defendants' attorneys. Rule 80B(e) requires "t]he parties to meet in advance of the time for filing the plaintiff's brief to agree on the record to be submitted." Rule 80B(h) then provides, "If the plaintiff fails to comply with subdivision

4

(e). . .of this rule, the court may dismiss the action for want of prosecution." On the basis of these rules, the defendants argue that the appeal should be dismissed because the plaintiffs' attorney failed to consult with their attorneys during the process of forming and then filing the record.

The court declines to impose this harsh result. Plainly, plaintiffs' counsel should have worked collaboratively with the defendants' attorneys during this process. The rule, however, imposes on all parties the responsibility to engage in this process. If, as is true here, the plaintiff does not take the initiative to involve the other parties, those other parties have remedies, such as seeking leave to supplement the record independently or to require that the process of creating the record begin anew. Here, none of the defendants contend that they have been prejudiced by the inclusion of material they find objectionable or by the exclusion of material that, in their view, is important. Under these circumstances, the court declines to dismiss the appeal.

Anthony Belch and Elizabeth Belch own property located on Main Street in Ellsworth. The record suggests that in 2002, the municipal code enforcement officer approved the Belches' plan to convert an existing structure into a 3-unit apartment building and advised them that they did not need to apply for or obtain municipal approval to do so. The CEO issued a building permit in August 2002. At some later time, however, apparently after the Belches made the conversion, the CEO[2] advised the Belches that the development constituted a subdivision and that they needed Board approval. Consequently, the Belches filed an application for a minor subdivision approval with the Board. The application is dated April 13, 2006, and it was considered at the Board's meeting held on May 3, 2006.

Under the ordinance, the purpose of the May 3 meeting was to allow the Board to determine if the Belches' application was complete. One of the plaintiffs, James Silsby, Jr. participated in the meeting and received confirmation that he would be entitled to speak further about the subdivision application at the next meeting if the Board

---

[2] The minutes from the May 3, 2006, meeting suggest that the CEO who advised the Belches to apply for subdivision approval in 2006 was not the same person who gave the Belches contrary information in 2002.

5

concluded that the application was complete. The record then indicates that the Board concluded that the application was complete under the municipal subdivision ordinance.[3]

The matter was scheduled for further administrative consideration for a meeting set for June 7, 2006. Among other things, the agenda, which was the subject of advance public notice, included the following item:

> **DELIBERATIONS, FINDINGS OF FACT AND CONCLUSIONS** for a Minor Subdivision Plan entitled Whitmore House. The proposal is for a 3-unit apartment located on the corner of Carlisle, Main and Spencer Streets (Tax Map 137 Lot 69/Belch) in the R1 zone encompassing 1.4 acres of land.

At the June 7 meeting, the Board first discussed whether the Belches' application remained complete in light of updated information concerning fire code compliance and other issues. The Board concluded that the application was complete under the subdivision ordinance and proceeded to a public hearing on the merits of the Belches' application. During this portion of the hearing, two of the plaintiffs at bar, Silsby and Richard Spinney, made presentations to the Board. Additionally, submissions by other nearby property owners – including a number of the plaintiffs at bar -- were distributed to the Board members. Spinney's comments and a written submission signed by others addressed the issue of whether a restrictive covenant in the Belches' deed foreclosed any approval of their application. This is the very issue raised in count 2 of the complaint.

Following public comment, the Board voted and concluded unanimously that the minor subdivision application satisfied the relevant standards of the municipal subdivision ordinance and thereby approved the application.

The plaintiffs first argue that the City did not comply with the public hearing notice requirements established by ordinance. Section 6.2(D) of the subdivision ordinance requires the Board to hold a hearing within 30 days of the date it receives a complete application. Notice of that hearing must be provided in a newspaper of general local circulation at least two weeks prior to the hearing date. Here, the plaintiffs contend that the Board actually held a hearing on the merits of the Belches' application on the

---

[3] A portion of the minutes from the May 3 meeting state, "John Fink [a Board member] explained the pre-application review under Article V is for completeness only and would not imply approval. The items discussed earlier that were missing would be required for the final plan approval."

date it determined that the application was complete. For purposes of its analysis, the court accepts this premise without deciding whether it is correct.[4]

Even with that assumed predicate, however, the plaintiffs have not established that the June 7 decision to approve the application must be vacated. First, the record does not demonstrate that the plaintiffs have preserved the issue for appellate consideration. The plaintiffs bear the ultimate responsibility for presenting a record that will allow proper appellate review of the administrative proceeding. *See* M.R.Civ.P. 80B(e). The record of the June 7 hearing is limited to the Board's minutes and material that was submitted to the Board for its consideration at the meeting. Nothing in that material suggests that any person objected to the Board deliberating on the application itself at that hearing. The plaintiffs' argument is particularly susceptible to a preservation requirement, because that argument challenges the procedure used by the Board. If the Board was proceeding improperly, and if that error had been brought to the Board's attention, it would have been in a position to respond – either by considering and rejecting the challenge, or by acceding to it if the Board concluded that the challenge had merit. Here, however, because the record is devoid of any suggestion that the issue was raised below, the court considers the issue unpreserved, and it thus cannot form the basis for relief now.[5]

Additionally, the plaintiffs have not demonstrated that they were prejudiced even if the Board considered the Belches' application prematurely. The advance public notice advertised that the merits of the application would be addressed. At least some of the plaintiffs were plainly prepared to present the Board with their positions on the application. In particular, at the hearing several of the plaintiffs specifically addressed

---

[4] The minutes of the May 3 meeting may be seen to suggest that, at that time, the Board concluded that the Belches' application was complete. If so, then its determination of completeness was made in advance of the June 7 meeting, when the application proper was approved. The June 7 meeting minutes, however, do indicate that the Board gave further consideration to the completeness of the Belches' application at that time.

[5] The plaintiffs argue that a comment made by Silsby at the May 3 meeting, as reflected in the minutes to that meeting, is sufficient to preserve their argument here. There is no evidence, however, that at the June 7 meeting anyone objected to the Board's decision to consider the merits of the Belches' application at that meeting. The comments that Silsby made at a prior meeting are not sufficient to preserve the issue here.

7

the substantive issue that they have pursued on appeal (the effect of a restrictive covenant in the Belches' deed to the subject premises). These presentations were in written and testimonial form. Nothing in the record suggests that the plaintiffs were caught off guard or were otherwise prejudiced by the procedure used by the Board. *Cf. Town of Ogunquit v. Dep't of Public Safety*, 2001 ME 47, ¶ 11, 767 A.2d 291, 294 ("A technical violation of a statutorily prescribed manner to give notice is not fatal when it does not prejudice the party receiving notice, and a court may disregard nonprejudicial failure to comply strictly with notice requirements.").

Therefore, even if the Board erred in addressing and acting on the Belches' application at the June 7 meeting, the plaintiffs have not demonstrated that they preserved the issue for appellate consideration, and they have not shown any resulting prejudice.

Second, the plaintiffs urge that the Belches were not entitled to receive approval of the subdivision application because their deed includes the following restrictive covenant applicable to three of the four parcels:[6]

> The Grantees [Anthony Belch and Elizabeth Belch]. . .covenant and agree with the Grantor. . .that they will not construct on the premises herein conveyed any buildings, with the necessary and convenient other buildings to serve a homestead, at a cost of less than $8,000, and it is further covenanted and agreed as aforesaid that they will not permit the premises to be used for any commercial purposes.

(Emphasis in original.) This restrictive covenant carries significance, because the subdivision ordinance requires that the Board may approve a final plan under the subdivision ordinance only if the lots also conform to the municipal land use ordinance. *See* ELLSWORTH, MAINE SUBDIVISION ORDINANCE § 12.5(A). The City's land use ordinance, in turn, provides that if its provisions conflict with the terms of a more restrictive deed restriction, then the latter controls. *See* ELLSWORTH, MAINE LAND USE

---

[6] The deed to the Belches, which is part of their administrative application, operates to convey four parcels. The plaintiffs suggest that the four parcels comprise the premises where the subject building is located. In the portion of the deed relating to the fourth parcel, the same restrictive covenant appears but is subject to a $10,000 threshold rather than one for $8,000. Whether all or only some of these portions of the deed apply to the subject premises is of no matter, because the application of any one of the restrictive covenants triggers the legal issue the plaintiffs raise here.

8

ORDINANCE Art. IX, § 1 (2006). The plaintiff argues that the restrictive covenant in the Belches' deed to the subject premises bars them from converting the structure into a multi-unit apartment building for two reasons: first, because it is no longer a "homestead;" and, second, because it becomes a building operated for commercial purposes. The plaintiffs contend that these effects of the restrictive covenant limit the use that the Board may approve and that the Board's approval of the application exceeded its lawful authority.[7]

The minutes from the June 7 meeting indicate that the Board examined the Belches' application only to determine if it satisfied the City's subdivision ordinance; it did not engage in a similar analysis of its compliance with the municipal land use ordinance. Neither the Belches nor the City itself argue otherwise here. Nonetheless, the Board accepted testimony about whether the proposed use of the structure was allowed within the scope of the restrictive covenant at issue here. Thus, the plaintiffs had the opportunity to present the Board with the factual information they wanted the Board to consider on this point. Similarly, the Belches submitted a letter from an attorney also addressing the question of whether the converted building is a use permitted under the terms of the deed.

Although the Board did not expressly address the issue raised here by the plaintiffs, the parties on this appeal have addressed the substantive question by applying the terms of the restrictive covenant to the Belches' proposed use of the building. No party has urged a remand of this case to the Board for further findings on the question. The parties' arguments reflect a joint approach that the issue is not affected by factual disputes but rather turns on the abstract interpretation of the relevant provision in the deed.

By its plain language, the covenant allows for the construction of a "homestead" on the premises. It merely imposes a requirement that the construction costs for the "homestead," including the costs of accessory buildings, must be at least $8,000. A "homestead" is "a place where a family makes its home, including the land, house and

---

[7] The land use ordinance itself allows the conversion of a single-family dwelling into multi-unit residences in the district where the subject property is located (the R1 district). See ELLSWORTH, MAINE LAND USE ORDINANCE Art. X, § 2(C)(4).

outbuildings." WEBSTER'S NEW WORLD DICTIONARY 671 (2nd Coll. Ed.1978). *See also* 1 Compact Edition of the Oxford English Dictionary 1323 (1981) (defining "homestead" as "[t]he place of one's dwelling or home"). These legitimate definitions do not limit a homestead to a place occupied by the owner. Thus, apartments are a type of homestead, and to that extent they are a permissible use of the Belches' land within the terms of the restrictive covenant.

In light of the affirmative grant of that use, it is not reasonable to then conclude that the prohibition against "commercial" use of the property does not bar its function as an apartment building. Were it otherwise, much of the meaning of "homestead" largely would be vitiated. Rather, the prohibition against "commercial purposes" is better seen to preclude retail or business uses not associated with a residential function. Indeed, the land use ordinance defines "commercial use" as one that generates income from transactions of goods and services, "exclusive of rental of residential buildings and/or dwelling units." *See* ELLSWORTH, MAINE LAND USE ORDINANCE Art. II. This definition of "commercial use" is not dispositive, because it appears in an extrinsic legislative context and is not in the Belches' deed. Nonetheless, it demonstrates that the concept of a "commercial" use may not implicate income-producing residential property, such as apartments that are made available for rent.

Thus, the court concludes that the conversion of the building into a 3-unit residential facility does not violate the restrictive covenant in the Belches' deed and consequently is not violative of the land use ordinance.

Finally, as a contention presented in an appellate format, the plaintiffs argue that one of the Board members suffered from a conflict of interest and should have been disqualified from participating in the Board's proceedings on this matter. Nothing in the record establishes this point.

Because the court concludes that the Board did not err in approving the Belches' application, the court does not reach their contention that they had a vested right to acquire that approval because of their reliance on the information provided to them in 2002 by the CEO.

The entry shall be:

10

For the foregoing reasons, the decision of the City of Ellsworth Planning Board is affirmed.

Dated: June 18, 2007

_____
Justice, Maine Superior Court

**FILED &
ENTERED**

JUN 2 1 2007

**SUPERIOR COURT
HANCOCK COUNTY**