Bradley VARNEY, Peter Angis, Gene Libby, and the Maine Depuration Clam Diggers Association

v.

Vinal O. LOOK.

Supreme Judicial Court of Maine.

Aug. 18, 1977.

Dunlap, Wood & O'Brien by Gary C. Wood, Portland, for plaintiffs.

Edward F. Bradley, Jr., Asst. Atty. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

DELAHANTY, Justice.

Defendant, Vinal O. Look,[1] the Commissioner of Marine Resources, (the Commissioner) received from the presiding Justice

1. Vinal O. Look has succeeded Spencer Apollonio as Commissioner of Marine Resources of the State of Maine and has been substituted, pursuant to M.R.Civ.P. 25(d)(1), as the named party defendant as of January 7, 1976.

a summary judgment in his favor and plaintiffs have appealed. We dismiss the appeal for lack of standing.

Since 1957, Maine has had a statute prohibiting the taking or digging of clams "except by devices or instruments operated *solely by hand power.*" 12 M.R.S.A. § 4352(1) (emphasis added). Use of the hydraulic dredge, the instrument for digging clams which is at issue in this case, is specifically prohibited by 12 M.R.S.A. § 4352(2):

> 2. Boats and *hydraulic dredges. It is unlawful for the purpose of taking clams* or marine worms *to dig, rake, loosen or disturb the flats with the* propeller or with any other part of any boat or *hydraulic dredge* (emphasis added).[2]

In 1973, the Legislature enacted a statute authorizing the Commissioner to issue special licenses which would exempt the holder from certain laws administered by the Department of Marine Resources. 12 M.R.S.A. § 3703–A. Purportedly pursuant to this statute, three clam company owners applied in February and March of 1975 for special licenses to use hydraulic clam rakes in polluted flats approved for depuration processing and harvesting.

On December 20, 1974, pursuant to the authority of 12 M.R.S.A. § 3452,[3] the Commissioner held hearings in accordance with 12 M.R.S.A. § 4302–B[4] to consider regulations to control the harvesting and transporting of shellfish for depuration purposes. On April 22, 1975 the Commissioner promulgated certain regulations to become effective May 10, 1975, and among them was

F–IV–N, the regulation in question in this case. F–IV–N provides that "[t]he use of a hydraulic clam rake (so-called) may be authorized by the Commissioner in areas designated for depuration purposes" subject to certain provisions, including submission of a request for a special license in accordance with 12 M.R.S.A. § 3703–A.

On June 26, 1975 plaintiffs filed a complaint seeking a declaratory judgment that the Commissioner had no authority to promulgate F–IV–N since it contravenes 12 M.R.S.A. § 4352(1), the section restricting clam harvesting to hand devices. Plaintiffs stated in their complaint that they were clam diggers and members of the Maine Depuration Clam Diggers Association, "an unincorporated association of approximately 50 members, all of whom earn their livelihood by digging clams in closed areas to be sold only to three depuration plants, located in the Town of Scarborough, Maine."[5] Approximately two weeks after the complaint was filed, the hydraulic rake license was issued to one of the three applicants.[6]

Plaintiffs and defendant filed motions for summary judgment. Finding that the specific requirements for issuance of a special license for a hydraulic rake had been satisfied by the three applicants, the presiding Justice concluded that the Commissioner was correct in issuing the licenses. On February 10, 1976, judgment was entered for defendant on his motion for summary judgment and plaintiffs' motion for summary judgment was denied. Plaintiffs appeal

---

**2.** Specific statutory exceptions permit use of the hydraulic dredge in the Town of Phippsburg and in a section of the coast between Cape Elizabeth and Pemaquid Point. 12 M.R.S.A. § 4352(5) & (6).

**3.** In pertinent part, 12 M.R.S.A. § 3452 provides:

> The commissioner may authorize individuals, concerns or entities to take shellfish from polluted flats or waters for the purpose of depurating them in accordance with the requirements set forth in section 4302–B and the regulations promulgated thereunder.

**4.** 12 M.R.S.A. § 4302–B states in part:

> 2. Duties of commissioner. The commissioner, at his discretion, shall by regulation prescribe minimum standards for establishments and for sanitation and quality control of the processing of fish and fishery products. . . .
> *The commissioner shall adopt such regulations after public hearing.* (emphasis added).

**5.** This Court was informed at oral argument that the Maine Depuration Clam Diggers Association had decided not to pursue its appeal.

**6.** According to defendant's answer of July 15, 1975, the Commissioner on that date was "in the process of issuing licenses" to all three applicants.

from the decision on these motions. Although several points are raised on appeal, including a question as to the Commissioner's authority to promulgate F–IV–N and the necessity of a hearing before issuance of the hydraulic rake license, we need not reach these issues since plaintiffs have failed to establish their right to bring this appeal.

■ The right of appeal is not constitutionally guaranteed, but it "may be granted subject to such restrictions, limitations and conditions as the Legislature may attach to it." *Portland Pipe Line Corp. v. Environmental Improvement Commission*, Me., 307 A.2d 1, 15 (1973) *citing Harrington v. Harrington*, Me., 269 A.2d 310 (1970). Our Legislature did restrict this appeal right when it enacted 14 M.R.S.A. § 1851 which provides that *"any party aggrieved* by any judgment, ruling or order may appeal therefrom to the law court . . . ." (emphasis added). In our opinion, these three purported appellants are not "aggrieved" within the meaning of the statute.[7]

■ We said in *Jamison v. Shepard*, Me., 270 A.2d 861 (1970) that

[f]or aggrievance by a judgment or order, such judgment or order must operate prejudicially and directly upon a party's property, pecuniary or personal rights. *Id.* at 862–63.

*Accord, In Re Pittston Co.*, Me., 375 A.2d 530 (1977); *Blaney v. Rittall*, Me., 312 A.2d 522 (1973). The adverse effect on the party must be something more than nominal or speculative; subjection to inconvenience, annoyance and even expense by a decree does not entitle a party to appeal from it. *Sherer v. Sherer*, 93 Me. 210, 44 A. 899 (1899). An appellant's first duty is to demonstrate affirmatively that he is sufficiently aggrieved. *In Re Maine Central R.R.*, 134 Me. 217, 183 A. 844 (1936); *State v. Intoxicating Liquors*, 112 Me. 138, 91 A. 175

(1914). Indeed, "an appeal cannot . . . be presented by a party not aggrieved, any more than it could be by a stranger to the record." *Perkins v. Kavanaugh*, 135 Me. 344, 345, 196 A. 645, 646 (1938).

■ Here, appellants assert that they are sufficiently aggrieved because:

. . . the use of the hydraulic dredges will substantially increase the supply of clams for sale to the three depuration plants in the Scarborough area; [and]

. . . the increase in supply will cause a drop in demand, a result of which will be to deprive the three Plaintiffs, individually, and the members of the Association, jointly, from their livelihood as clam diggers.

Basically, their claim is that they would be injured by the granting of the hydraulic rake license to the three applicants because of the additional business competition which would be thereby generated. We do not believe that they have, by virtue of this allegation, satisfied the test for aggrievance set forth in *Jamison, supra*

Plaintiffs may continue to dig clams by hand in the very areas where they had been digging before issuance of the hydraulic rake licenses. They are not being denied the right to dig in any area, and in fact, if they should so desire, they too may apply for hydraulic rake licenses. Furthermore, use of the hydraulic rake was restricted by the Commissioner to the harvesting of a specified number of bushels of clams per day. Defendant's answer states that this restriction was imposed "solely with a view to assuring an adequate supply of clams for the three depuration plants in question."

We do not think that the purported appellants have shown a deprivation of their livelihood. The best that they have demonstrated is a tenuous and speculative possibility of some monetary harm, and this is not sufficient for standing. In such a case it is our duty to dismiss the appeal.[8]

---

7. Since we dispose of this case on the "aggrieved" issue, we need not reach the question of whether the appellants were "parties" in the hearings below, and we intend to intimate no opinion on that issue.

8. Appellants had an opportunity to present their case fully at the hearings held on December 20, 1974, prior to promulgation of F–IV–N. They apparently never appeared at these hearings, although notice of the hearings was published in the state newspaper as required by 12 M.R.S.A. § 4302–B.

The entry must be

Appeal Dismissed.