2008 ME 187

Carl LINDEMANN

v.

COMMISSION ON GOVERNMENTAL
ETHICS AND ELECTION
PRACTICES.

Supreme Judicial Court of Maine.

Argued: Sept. 17, 2008.
Decided: Dec. 16, 2008.

John H. Branson, Esq. (orally), Law Office of John H. Branson, P.A., Portland, ME, for Carl Lindemann.

G. Steven Rowe, Attorney General, Phyllis Gardiner, Asst. Atty. Gen. (orally), Augusta, ME, for the Maine Commission

on Governmental Ethics and Election Practices.

Panel: SAUFLEY, C.J., and CLIFFORD,* ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

MEAD, J.

[¶ 1] Carl Lindemann appeals from a judgment of the Superior Court (Kennebec County, *Mills, J.*) dismissing for lack of standing his petition for review of a final agency action made by the Commission on Governmental Ethics and Election Practices (Commission.) Lindemann argues that he meets the standing requirements set forth in the Maine Administrative Procedure Act (MAPA), and articulated by the United States Supreme Court in *Federal Election Commission v. Akins,* 524 U.S. 11, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998). He also argues that pursuant to 5 M.R.S. § 11007(1) (2007), he was entitled to oral argument on his petition. We conclude that Lindemann does not have standing under either MAPA or *Akins,* and he was not entitled to oral argument pursuant to 5 M.R.S. § 11007(1). We affirm the judgment.

---

* Although not available at oral argument, Justice Clifford participated in the decision. M.R.App. P. 12(a).

1. Section 1003 authorizes investigations by the Commission. The pertinent part reads:

    **2. INVESTIGATIONS REQUESTED.** A person may apply in writing to the commission requesting an investigation concerning the registration of a candidate, treasurer, political committee or political action committee and contributions by or to and expenditures by a person, candidate, treasurer, political committee or political action committee. The commission shall review the application and shall make the investigation if the reasons stated for the request show sufficient grounds for believing that a violation may have occurred.

    21–A M.R.S. § 1003(2) (2007).

## I. BACKGROUND

[¶ 2] On October 19, 2006, Lindemann made an investigation request, pursuant to 21–A M.R.S. § 1003(2) (2007),[1] to the Commission. The request concerned the Maine Heritage Policy Center's (MHPC) involvement in a statewide referendum campaign to enact a Taxpayer Bill of Rights (TABOR). Lindemann's complaint suggested that MHPC qualified as a political action committee as defined by 21–A M.R.S. § 1052(5) (2007) and, as a political action committee, was required to register and file reports with the Commission. In the alternative, Lindemann suggested that if MHPC was not a political action committee, it was required to disclose expenditures made in connection with TABOR under 21–A M.R.S. § 1056–B(2007).[2]

[¶ 3] Beginning on October 20, 2006, Lindemann's complaint was addressed at a series of Commission meetings. The Commission received input on the matter from its staff, counsel for MHPC and Lindemann, and other interested parties. The Commission also received recordings of a public forum conducted by MHPC and

---

2. Section 1056–B governs expenditures for those organizations not considered political action committees. It provides:

    Any person not defined as a political committee who solicits and receives contributions or makes expenditures, other than by contribution to a political action committee, aggregating in excess of $1,500 for the purpose of initiating, promoting, defeating or influencing in any way a ballot question must file a report with the commission.

    21–A M.R.S. § 1056–B (2007).

    Title 21–A M.R.S. § 1056–B has since been amended. P.L. 2007, ch. 477, § 4 (effective June 30, 2008) (codified at 21–A M.R.S. § 1056–B (2008)). These types of non-political action committees are now called "ballot question committees" and the contribution and expenditure amount has increased to $5000. These changes do not impact the Court's analysis of Lindemann's standing.

MHPC press releases. On November 7, 2006, during the course of the Commission's review, the TABOR initiative was defeated.

[¶ 4] The Commission made its final decision (the enforcement decision) at its December 20, 2006, meeting. A written decision was issued on December 22, 2006, and consisted of three determinations. The Commission first determined that MHPC's major purpose was not to advocate for the passage of the TABOR initiative. Second, the Commission determined that MHPC was not a political action committee as defined at 21–A M.R.S. § 1052(5). Third, the Commission determined that MHPC had received contributions and made expenditures aggregating in excess of $1500 for the purpose of initiating, promoting, or influencing TABOR and directed MHPC to file a report pursuant to 21–A M.R.S. § 1056–B. The report was to be filed within thirty days of the written decision.[3]

[¶ 5] On January 19, 2007, Lindemann appealed to the Superior Court pursuant to M.R. Civ. P. 80C and 5 M.R.S. § 11002 (2007), requesting a review of the determinations and actions of the Commission. After Lindemann and the Commission filed their respective memoranda, Lindemann made a written request for oral argument. On February 28, 2008, without oral argument, the Superior Court issued its decision and order dismissing Lindemann's appeal. The court concluded that his injury was indistinct from any injury to the public at large, and therefore, Lindemann failed to satisfy the threshold requirement of standing. Lindemann's appeal to this Court followed.

## II.  DISCUSSION

[¶ 6] Lindemann's standing argument is based in statute and federal case law. First, he argues that because the Campaign Reports and Finances statutes (campaign statutes), 21–A M.R.S. §§ 1001–1105 (2007), do not specifically preclude or limit judicial review of the Commission's enforcement decision, judicial review under MAPA is allowed. Second, Lindemann argues he has satisfied prudential standing as articulated by the United States Supreme Court in *Akins*, because his informational injury,[4] the deprivation of information concerning TABOR, falls within the zone of interest sought to be protected by Maine's campaign statutes.

■ [¶ 7] A party's standing to bring a Rule 80C appeal is reviewed de novo. *See Norris Family Assocs., LLC v. Town of Phippsburg*, 2005 ME 102, ¶ 11, 879 A.2d 1007, 1012.

### A.  Standing Under Maine's Campaign Statutes and MAPA

■ [¶ 8] In Maine, standing jurisprudence is prudential, rather than constitutional. *Roop v. City of Belfast*, 2007 ME 32, ¶ 7, 915 A.2d 966, 968. (quotation marks omitted). Standing is a threshold issue and Maine courts are "only open to those who meet this basic requirement." *Ricci v. Superintendent, Bureau of Banking*, 485 A.2d 645, 647 (Me.1984). While there is no set formula for determining standing, a court may "limit access to the courts to

---

**3.** MHPC's compliance with the Commission's order to file this report is not at issue.

**4.** In *Akins*, the Supreme Court labeled the plaintiffs' failure to obtain information an "informational injury." *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998). "Informational injury" has been further defined as "that injury caused when voters are deprived of useful political information at the time of voting." *Judicial Watch, Inc. v. Fed. Election Comm'n*, 293 F.Supp.2d 41, 46 (D.D.C.2003).

those best suited to assert a particular claim." *Roop*, 2007 ME 32, ¶ 7, 915 A.2d at 968 (citation omitted). In addition, the question of whether a specific individual has standing is significantly affected by the unique context of the claim. *Id.*

[¶ 9] In the context of an administrative decision, as is the case here, the right to judicial review is governed by statute. *Nelson v. Bayroot, LLC*, 2008 ME 91, ¶ 9, 953 A.2d 378, 381. "Whether a party has standing depends on the wording of the specific statute involved." *Id.*

[¶ 10] Title 21–A M.R.S. § 1003(2) (2007) of Maine's campaign statutes provides:

> A person may apply in writing to the commission requesting an investigation concerning the registration of a candidate, treasurer, political committee or political action committee and contributions by or to and expenditures by a person, candidate, treasurer, political committee or political action committee. The commission shall review the application and shall make the investigation if the reasons stated for the request show sufficient grounds for believing that a violation may have occurred.

[¶ 11] There is no express provision here or elsewhere in the Maine campaign statutes allowing or precluding judicial review of Commission enforcement determinations. As the Commission noted, MAPA governs judicial review of its actions.[5] Lindemann's standing to obtain judicial review of the Commission's enforcement decision, therefore, depends on whether he has standing under MAPA.

[¶ 12] MAPA provides a right to judicial review to any person "aggrieved" by an agency's final action or an agency's failure or refusal to act. 5 M.R.S. § 11001(1), (2) (2007).[6] We conclude that neither provision of MAPA supports Lindemann's claim for standing.

[¶ 13] First, section 11001(2) is inapplicable to Lindemann's claim because the Commission has not failed or refused to act. Only a "person aggrieved by the failure or refusal of an agency to act" is entitled to judicial review pursuant to 5 M.R.S. § 11001(2). Here, Lindemann made an investigation request to the Commission pursuant to 21–A M.R.S. § 1003(2). The Commission reviewed and accepted Lindemann's request and undertook an extensive investigation that included oral testimony at Commission meetings and review of extensive written submis-

---

**5.** The written determination issued by the Commission provided that "any person aggrieved by [the Commission's] determination has a right to seek judicial review ... in Superior Court, in accordance with Title 5 M.R.S.A. §§ 11001 & 11002."

**6.** Section 11001(1) of MAPA sets forth the right to review agency action by providing:
> Except where a statute provides for direct review or review of a pro forma judicial decree by the Supreme Judicial Court or where judicial review is specifically precluded or the issues therein limited by statute, any person who is aggrieved by final agency action shall be entitled to judicial review thereof in the Superior Court in the manner provided by this subchapter. Pre-

liminary, procedural, intermediate or other nonfinal agency action shall be independently reviewable only if review of the final agency action would not provide an adequate remedy.

5 M.R.S. § 11001(1) (2007).

Section 11001(2) of MAPA sets forth the right to review an agency's failure or refusal to act by providing:
> Any person aggrieved by the failure or refusal of an agency to act shall be entitled to judicial review thereof in the Superior Court. The relief available in the Superior Court shall include an order requiring the agency to make a decision within a time certain.

5 M.R.S. § 11001(2) (2007).

sions and documents.[7] The Commission's final agency action occurred when it voted and issued a written enforcement decision on the matter. Because the Commission has not failed or refused to act, section 11001(2) is not implicated.

[¶ 14] Section 11001(1) also provides no avenue to Lindemann to judicially attack the Commission's findings because he is unable to demonstrate that he is "aggrieved." Only a "person who is aggrieved by final agency action shall be entitled to judicial review." 5 M.R.S. § 11001(1). "Aggrieved," while not defined in MAPA, has been previously defined by this Court as requiring particularized injury—that is, the agency action or inaction must operate "prejudicially and directly upon the party's property, pecuniary or personal rights." *Nelson*, 2008 ME 91, ¶ 10, 953 A.2d at 382. In addition, we have required that the particularized injury be distinct from any injury experienced by the public at large. *Id.*; *Ricci*, 485 A.2d at 647.

[¶ 15] In limited circumstances, we have allowed individual members of the public to vindicate public rights in a judicial forum. *See generally Fitzgerald v. Baxter State Park Auth.*, 385 A.2d 189 (Me.1978). For example, we recognized standing for citizens asserting a political right shared by the public at large, when a "particularized interest" was demonstrated. *McCaffrey v. Gartley*, 377 A.2d 1367, 1370 (Me.1977) (recognizing plaintiffs' standing as voters, property taxpayers, and signers of an initiative). Even in these circumstances, we still require a "particularized injury" or "direct and personal injury." *Fitzgerald*, 385 A.2d at 197; *see also Heald v. Sch. Admin. Dist. No. 74*, 387 A.2d 1, 3 (Me.1978) (finding no standing when plaintiffs did not demonstrate direct personal injury). "Being affected by a governmental action is insufficient to confer standing in the absence of any showing that the effect is an injury." *Collins v. State*, 2000 ME 85, ¶ 7, 750 A.2d 1257, 1260.

[¶ 16] Here, Lindemann is arguably affected, but not directly or personally injured, by the Commission's enforcement decision. Assuming there was an injury that flowed from the Commission's final decision, the injury affected all citizens, not just Lindemann.[8] His alleged informational injury is indistinguishable from any injury experienced by other Maine citizens.

[¶ 17] Because the Commission did not fail or refuse to act and Lindemann is not "aggrieved" by the Commission's decision, we conclude that MAPA does not confer standing on Lindemann to appeal from the Commission's decision.[9]

---

7. As part of its investigation, the Commission could have subpoenaed witnesses and records and taken evidence under oath, but it was not required to do so. 21–A M.R.S. § 1003(1) (2007).

8. There remains a very significant question of whether any injury of any kind occurred. *See infra* paragraph 21.

9. Lindemann also does not have standing as a "party" as defined by the Maine Administrative Procedure Act (MAPA) in 5 M.R.S. § 8002(7) (2007). Party status is one, but not the only, requirement of standing under MAPA. *See Anderson v. Comm'r of Dep't of Human Servs.*, 489 A.2d 1094, 1097 n. 6 (Me. 1985) (stating "[t]he plaintiff was a party before the hearing officer, *also* a necessary element of standing") (emphasis added); *see also Hammond Lumber Co. v. Fin. Auth. of Me.*, 521 A.2d 283, 286 n. 5 (Me.1987) (stating "[b]eing a party during the proceedings before the agency is an essential *criterion* for standing") (emphasis added); *but cf. Superintendent of Ins. v. Attorney General*, 558 A.2d 1197 (Me.1989). In *Superintendent of Insurance*, the Insurance Code statutes at issue had

Furthermore, an agency charged with enforcing a particular statute or rule has the prerogative of electing not to take action. *See generally, Herrle v. Town of Waterboro*, 2001 ME 1, ¶¶ 10–11, 763 A.2d 1159, 1161–62 (discussing prosecutorial discretion in enforcement actions). These decisions are left to the sole discretion of the agency and are not ordinarily subject to judicial review at the behest of members of the general public. In this matter, if the Commission received Lindemann's request for an investigation and elected not to investigate, the same result would occur—Lindemann lacks standing to seek judicial review. His right, as established in section 1003(2), is to request the Commission to conduct an investigation; the Commission's obligation *vis-à-vis* Lindemann is simply to accept and review his request. A review concluding that no action or investigation will be undertaken creates no right of judicial review in Lindemann or any other member of the general public.

## B. Standing under *Federal Election Commission v. Akins*

[¶ 18] Lindemann's argument that he has standing as an ordinary citizen according to *Akins* is also unavailing. In *Akins*, the United States Supreme Court discussed its standing requirements in light of the Federal Election Campaign Act (FECA), 2 U.S.C.S. §§ 431–457 (LexisNexis 2002 & Supp. 2008), an Act that imposes extensive recordkeeping and disclosure requirements on political action committees. 524 U.S. at 15, 118 S.Ct. 1777. Plaintiffs were voters who filed a complaint with the Federal Election Commission asking the FEC to find that the American Israel Public Affairs Committee had violated FECA in failing to abide by FECA's disclosure requirements. *Id.* at 15–16, 118 S.Ct. 1777. The FEC dismissed the complaint, finding that AIPAC was not a political action committee and therefore, not subject to the disclosure requirements. *Id.* at 17, 118 S.Ct. 1777.

[¶ 19] On appeal, the United States Supreme Court found standing because "the injury asserted by the plaintiff arguably [fell] within the zone of interest to be protected or regulated by the statute." *Akins*, 524 U.S. at 20, 118 S.Ct. 1777 (citation omitted). In reaching this conclusion, the Court evaluated the language of the statute and the nature of the plaintiffs' injury, stating that "Congress, intending to protect voters . . . from suffering the kind of injury at issue, intended to authorize this kind of suit." *Id.* The plaintiffs' prudential standing in *Akins* was therefore a result of "the language of the [FECA] statute *and* the nature of the injury." *Id.* (emphasis added). Both factors are absent in Lindemann's case.

[¶ 20] First, unlike FECA, Maine's campaign statutes do not expressly provide a right to judicial review.[10] MAPA

---

a more expansive grant of standing than MAPA, allowing *any* party to a hearing to appeal therefrom. *Id.* at 1201 (emphasis added). Thus, a party did not need show particularized aggrievement in order to have standing pursuant to the Insurance Code statutes. Here, however, the Maine campaign statutes do not include an independent or more expansive grant of standing. Although Lindemann filed the initial request for investigation and offered documentation and comment, his participation in the process does not, ipso facto, render him an actual party to the pro-

ceedings before the Commission. Whether Lindemann has standing is governed only by MAPA, which requires a showing of particularized injury. Lindemann has failed to demonstrate particularized injury.

10. The two statutory provisions interpreted by the Court in *Akins* were within the federal election campaign chapter, and within a section entitled "Enforcement." Section 437g(a)(1) states "[a]ny person who believes a violation of this Act . . . has occurred, may file a complaint with the Commission." 2

governs any right to judicial review. While there is an express provision in MAPA allowing for the judicial review of agency decisions, MAPA limits standing to petition for judicial review to those who are "aggrieved." As we have explained, Lindemann is not aggrieved, and thus has no right of judicial review under MAPA.

[¶ 21] Second, while Lindemann alleges an informational injury identical to that of the plaintiffs in *Akins,* he fails to demonstrate that he was deprived of useful political information. In *Akins,* plaintiffs were denied all access to information concerning contributions to and expenditures by AIPAC. Lindemann, on the other hand, has received information on MHPC's financial involvement with TABOR. Through the filing of a section 1056–B report, Lindemann gained information on MHPC's expenditures made for the purpose of initiating, promoting, or influencing TABOR. Any informational injury as it pertained to MHPC's financial involvement with TABOR ceased to exist when this information was disclosed pursuant to section 1056–B. *See Alliance For Democracy v. Fed. Election Comm'n* 335 F.Supp.2d 39, 48 (D.D.C. 2004) (finding no injury when plaintiffs "already possess the information they claim to lack"); *see also Alliance for Democracy v. Fed. Election Comm'n,* 362 F.Supp.2d 138, 147 (D.D.C.2005) (stating "no informational injury has been sustained here because the information required to be disclosed by the statute has already been disclosed").

[¶ 22] Because MAPA requires that those seeking judicial review of administrative decisions be "aggrieved," and because Lindemann has failed to demonstrate a cognizable injury, *Akins* does not apply.[11]

**C. Oral Argument**

[¶ 23] Lindemann also contends that the Superior Court erred in failing to schedule oral argument on his petition. Title 5 M.R.S. § 11007(1) states, "The [Superior Court], upon request or its own motion, shall set a schedule for the filing of briefs by the parties and for oral argument." Lindemann argues that this statute mandates, as a matter of law, oral argument on all such petitions.

[¶ 24] Procedural rulings or other matters where the court has choices are reviewed for abuse of discretion. *Bates v. Dep't of Behavioral & Developmental Servs.,* 2004 ME 154, ¶ 38, 863 A.2d 890, 901.

[¶ 25] Rule 80C(c) of the Maine Rules of Civil Procedure limits the manner and scope of review to that "provided by 5 M.R.S.A. § 11007(2) through section 11007(4)." The statutory provision Lindemann invokes, 11007(1), is thus excluded from the Rule. To the extent that Rule 80C differs or conflicts with MAPA, the Rule governs the manner and scope of the court's review of final agency action. *Arsenault v. Crossman,* 1997 ME 92, ¶ 4, 696

U.S.C.S. § 437g(a)(1) (LexisNexis 2002). Section 437g(8)(A) states "[a]ny party aggrieved by an order of the Commission dismissing a complaint filed by such party ... may file a petition with the United States District Court for the District of Columbia." 2 U.S.C.S. § 437g(8)(A) (LexisNexis 2002).

11. Lindemann also argues that given the compelling need for a transparent political process, we should recognize standing for or-

dinary citizens. Because standing in administrative appeals is statutorily based, whether standing to challenge a determination of the Commission should extend to the general public is a decision to be made by the legislature, not the judiciary. *See Varney v. Look,* 377 A.2d 81, 83 (Me.1977) ("The right of appeal ... may be granted subject to such restrictions, limitations and conditions as the Legislature may attach to it.") (citation omitted).

A.2d 418, 419; *see also State v. Leonard,* 470 A.2d 1262, 1266 (Me.1984) (citing 4 M.R.S.A. § 8 (1979)) ("All laws in conflict [with promulgated procedural rules] shall be of no further force and effect.").

[¶ 26]   Rule 80(C)(c) states that "unless the court otherwise directs," oral argument will be scheduled. The plain language of the Rule gives the court the prerogative to schedule, or not schedule, oral argument on 80C appeals. The court's failure to hold oral argument was therefore not an abuse of discretion.

The entry is:

Judgment affirmed.