STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
DOCKET NO. BCD-CV-2019-08

MICHAEL ZELMAN,
INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF ESTELLE BETTY ZELMAN,

    Plaintiff/Counterclaim-Defendant,

        v.

ANDREW ZELMAN, et al.,

    Defendants/Counterclaim-Plaintiffs,

    and

ELLEN ZELMAN,

STEVEN ZELMAN,

KATHERINE ZELMAN,

AEZ FAMILY TRUST,

ROBERT ZELMAN and

LAWRENCE ZELMAN

    Parties-in-Interest.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT

This matter comes before the Court on Plaintiff/Counterclaim-Defendant Michael Zelman's ("Michael") motion for summary judgment. Michael, both individually and in his capacity as Personal Representative of the Estate of Estelle Betty Zelman (the "Estate"), moves for summary judgment pursuant to M.R. Civ. P. 56(c) on both counts of his August 30, 2018 complaint (the "Complaint"), as well as on all three counts contained in the

1

Defendants'/Counterclaim-Plaintiffs' December 7, 2018 counterclaim (the "Counterclaim"). Defendants/Counterclaim-Plaintiffs Andrew Zelman ("Andrew") and Zelman Family Business Holdings, LLC ("ZFBH") (collectively "Defendants") oppose the motion. The Court heard oral argument on the motion on February 20, 2019.[1] Both parties appeared through counsel. Jerrol A. Crouter represented Michael and the Estate, and André G. Duchette represented Defendants.[2]

## PROCEDURAL HISTORY

Michael filed the Complaint against the Defendants and several named parties-in-interest seeking a judgment declaring that Andrew is not a manager of ZFBH and that, because Betty Zelman died as the sole remaining manager of ZFBH, ZFBH must be dissolved pursuant to the Operating Agreement (Count I). (Pl.'s Compl. ¶¶ 25-29.) Michael also requests an accounting by Andrew and an order requiring disgorgement of unauthorized income received by Andrew (Count II). (Pl.'s Compl. ¶¶ 30-33.) Defendants timely filed their answer and counterclaimed seeking declaratory relief (Counterclaim Count I), and alleging breach of contract (Counterclaim Count II) and unjust enrichment (Counterclaim Count III) (collectively "Counterclaim"). (Defs.' Countercl. ¶¶ 33-51.) Each count contained in the Complaint and Counterclaim stems from a series of events purportedly affecting the management and operation of ZFBH.

## FACTUAL BACKGROUND

ZFBH is a Nevada limited liability company with all of its assets located in the State of Maine.[3] (Supp.'g S.M.F. ¶ 1.) At the time of this action, the following individuals are members of

---

[1] The parties-in-interest did not file briefs and did not appear at oral argument.
[2] However, as discussed in note 27, *infra*, Andrew does not have authority as manager to engage counsel to represent ZFBH in this matter.
[3] ZFBH holds two properties located in Hiram, Maine. (Supp.'g S.M.F. ¶ 11; Opp. S.M.F. ¶ 11.) The property located at 133 Notch Road, Hiram, Maine (the "Farm") is the primary asset of ZFBH, and generates income from the rental of residences at the Farm and harvesting of hay, timber, and blueberries. (Supp.'g S.M.F. ¶ 12.)

ZFBH: Michael,[4] Andrew,[5] Robert Zelman ("Robert"),[6] Lawrence Zelman ("Larry"),[7] Katherine Zelman ("Katherine"),[8] Steven Zelman ("Steven"),[9] and the AEZ Family Trust.[10] (A. Zelman Aff. ¶¶ 3-4.) ZFBH is governed by the May 4, 2007 Operating Agreement of Zelman Family Business Holdings, LLC (the "Operating Agreement"). (Supp.'g S.M.F. ¶ 6; M. Zelman Aff. Ex. A.) Per the Operating Agreement, ZFBH is structured as a manager-managed limited liability company and the original managers of ZFBH were Victor Zelman ("Victor"), Estelle Betty Zelman ("Betty"), Andrew, and Bill. (Supp.'g S.M.F. ¶¶ 6, 9.)

In January 2015 Victor passed away, leaving Betty, Andrew, and Bill as the remaining managers of ZFBH. (Supp.'g S.M.F. ¶ 14.) On March 1, 2015, Andrew resigned as manager of ZFBH by providing ZFBH's members with notice of his resignation,[11] which listed an effective date of February 28, 2015. (Supp.'g S.M.F. ¶¶ 15-16; M. Zelman Aff. Ex. B.) However, on June 18, 2015, Andrew attempted to rescind his March 1 resignation as manager of ZFBH by sending notice of the purported rescission to ZFBH's members.[12] (Supp.'g S.M.F. ¶ 17; M. Zelman Aff. Ex. C.) Later that year, on November 9, Bill resigned as manager of ZFBH and sold his membership interest in ZFBH to Andrew. (Opp. S.M.F. ¶ 19.) Prior to resigning, but still on

---

[4] Michael is a resident of Florida and holds a 16.343% membership interest in ZFBH. (Supp.'g S.M.F. ¶ 2.) Furthermore, Michael is the Personal Representative of the Estate, and the Estate holds a .797% membership interest in ZFBH. (Supp.'g S.M.F. ¶ 3.)

[5] Andrew is a resident of Florida and holds a 18.041% membership interest in ZFBH. (A. Zelman Aff. ¶¶ 1, 3.) Andrew obtained his membership interest from William Zelman ("Bill") on November 9, 2015, when Bill resigned as manager of ZFBH. (Supp.'g S.M.F. ¶ 19.)

[6] Robert is a resident of Washington and holds a 16.343% membership interest in ZFBH. (Supp.'g S.M.F. ¶ 4.)

[7] Larry is a resident of New York and holds a 16.343% membership interest in ZFBH. (Supp.'g S.M.F. ¶ 5.)

[8] Katherine holds a 7.04% membership interest in ZFBH. (A. Zelman Aff. ¶ 4.)

[9] Steven holds a 7.04% membership interest in ZFBH. (A. Zelman Aff. ¶ 4.)

[10] The AEZ Family Trust holds a 18.041% membership interest in ZFBH. (A. Zelman Aff. ¶ 4.)

[11] In his notice to ZFBH's members, Andrew stated that he "await[s] the call for the required election of a new 4th manager under section 2.7 of the [Operating Agreement]." (Supp.'g S.M.F. ¶ 16; M. Zelman Aff. Ex. B.) Section 2.7 defines the term "Manager" under the Operating Agreement and states, in pertinent part, that the managers of ZFBH "shall act by vote of a majority in interest, unless unanimous vote is specifically required," and "[i]f any person serving as a Manager is . . . deceased or unwilling to serve as a Manager, then the Members representing a two-thirds majority in ownership shall elect a successor Manager." (M. Zelman Aff. Ex. A.)

[12] The Operating Agreement contains no provision pertaining to the rescission of a resignation by a manager. (*See* M. Zelman Aff. Ex. A; Supp.'g S.M.F. ¶ 18; Opp. S.M.F. ¶ 18.)

3

November 9, 2015, Bill claimed to appoint[13] Andrew as manager of ZFBH pursuant to section 13.20(A)[14] of the Operating Agreement.[15] (Opp. S.M.F. ¶ 20.) Roughly two years later, on January 29, 2018, Betty passed away. (Supp.'g S.M.F. ¶ 26.) At no time since Andrew's March 1 resignation has any member of ZFBH voted to elect any ZFBH manager or voted to amend relevant provisions of the Operating Agreement regarding the method of selecting ZFBH managers. (Supp.'g S.M.F. ¶ 24.) Andrew has since continued to claim that he is a manager of ZFBH, despite objections by Michael, and has operated in this purported capacity up to the commencement of this action.[16] (A. Zelman Aff. ¶¶ 7, 14-16; *see* Supp.'g S.M.F. ¶ 27; M. Zelman Reply Aff. ¶ 5.)

Under section 11.1(B) of the Operating Agreement, "[t]he Company shall be dissolved and liquidated upon . . . the death . . . of the sole remaining Manager, after the order of succession has been complied with." (Supp.'g S.M.F. ¶¶ 8, 28; M. Zelman Aff. Ex. A.) Michael claims that ZFBH must be dissolved because Betty's death, as sole remaining manager of ZFBH, satisfied the condition precedent contained within section 11.1(B) and, therefore, ZFBH must be dissolved. (*See* Supp.'g S.M.F. ¶¶ 26-28.) However, Andrew claims that as a result of his purported status as manager, the death of Betty did *not* satisfy the condition precedent in section 11.1(B) because he still remains a manager of ZFBH. (Opp. S.M.F. ¶¶ 16-22.) Section 11.1(B) also requires compliance with the "order of succession" as a necessary condition precedent to the dissolution of ZFBH, and Andrew points out that Michael has failed to establish any facts pertaining to the "order

---

[13] If the appointment was effective, then Andrew and Betty would have been the only two managers of ZFBH. In the alternative, if the appointment was ineffective, Betty would have been the sole remaining manager of ZFBH.

[14] Section 13.20(A) of the Operating Agreement states that, "[t]he Manager has authority, without the vote or consent of the Members, to amend the Company Agreement to reflect the addition or substitution of Members or the Manager." (Supp.'g S.M.F. ¶ 21; M. Zelamn Aff. Ex. A.)

[15] A similar situation occurred in 2014, when Robert was purportedly appointed to manager pursuant to section 13.20(A). (Defs.' Add'l S.M.F. ¶ 39.)

[16] Michael's accounting and disgorgement claim is premised upon allegations that Andrew was improperly acting as manager of ZFBH since March 1, 2015 and receiving compensation for the alleged unauthorized services that Andrew was providing in his purported capacity as manager.

of succession."[17] Furthermore, Andrew claims that Michael is precluded from seeking the dissolution of ZFBH, and thus has breached the Operating Agreement pursuant to section 8.4(B), which states in pertinent part that, "[n]o Member shall have the right to . . . petition for dissolution, or require petition of, or compel any sale or appraisal of the assets of [ZFBH]." (Defs.' Add'l S.M.F. ¶ 36; M. Zelman Aff. Ex. A.)

## STANDARD OF REVIEW

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. CityMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted). A genuine issue exists where the jury would be required to "choose between competing versions of the truth." *MP Assocs. v. Liberty*, 2001 ME 22, ¶ 12, 771 A.2d 1040. "Summary judgment is no longer an extreme remedy." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

## DISCUSSION

The parties agree, and the Court concurs, that Nevada law applies to the substantive legal issues raised in the motion for summary judgment. Under Nevada law, a limited liability company must be dissolved "[u]pon the occurrence of an event so specified in the articles of organization or operating agreement." Nev. Rev. Stat. Ann. § 86.491(1)(b).[18] As discussed below, Michael has failed to establish the occurrence of an event requiring dissolution as specified in the Operating Agreement.

---

[17] At oral argument the parties acknowledged that there is nothing in the summary judgment record supporting the existence of, or compliance with, an order of succession.

[18] Nevada law provides other circumstances that require dissolution, *see* Nev. Rev. Stat. Ann. § 86.491, but on summary judgment Michael has not pursued these alternate grounds for dissolution.

I.     Count I – Plaintiff's Claim for Declaratory Judgment for Dissolution and Liquidation of ZFBH

Count I requests a judgment by the Court declaring that upon Betty's death in January, 2018, the sole remaining manager of ZFBH had died and, therefore, under the express terms of section 11.1(B) of the Operating Agreement, ZFBH must be dissolved.[19] Michael claims that at the time of Betty's death, Betty was the sole manager of ZFBH. Andrew argues that Betty was not the sole remaining manager of ZFBH when she died in January 2018 because he was a manager at the time of her death and remains manager to this day. In response, Michael argues that Andrew is not a current manager of ZFBH and, in fact, has not been a manager of ZFBH since his March 1, 2015 resignation. Andrew's primary argument in support of him being a manager is that Bill's November 9, 2015 appointment of Andrew to manager was valid under section 13.20(A) of the Operating Agreement.[20] Michael disagrees with the effectiveness of Bill's appointment of Andrew and argues that section 13.20(A) does not grant a manager the power to unilaterally appoint additional managers.

It is undisputed that Andrew was one of the original managers of ZFBH and that Andrew resigned as manager on March 1, 2015. It is also undisputed that on November 9, 2015 Bill, before resigning as manager on the same day, purported to appoint Andrew as manager of ZFBH pursuant to section 13.20(A). If this appointment was valid under the Operating Agreement, then Andrew would have regained managerial status on November 9, 2015 and would still be a manager today. If this were true, then the death of Betty would not constitute the death of the sole remaining manager of ZFBH because Andrew survived her as manager. As a result, the condition precedent in section 11.1(B) would have been unsatisfied and Count I would necessarily fail. However, if

_____

[19] Count I also includes an allegation that the members are deadlocked (Pl.'s Compl. ¶ 29), but Michael has not pursued that claim as part of his Motion for Summary Judgment on Count I.
[20] Andrew makes other arguments in support of his claim to be a manager, all of which the Court addresses below.

6

Bill's purported appointment of Andrew was invalid under the Operating Agreement, then Andrew would have failed to regain managerial status on November 9, 2015 and would not have been a manager since March 1, 2015. If this were true, then Betty's death would constitute the death of the sole remaining manager of ZFBH and, as Count I claims, 11.1(B) would be implicated. Therefore, Count I requires the Court to make a determination regarding Andrew's managerial status before the Court can grant or deny the relief sought.

The Court determines that Andrew is not a manager of ZFBH, and has ceased to be a manager since his March 1, 2015 resignation. In making this finding, the Court has analyzed each of the three events that are alleged to affect Andrew's managerial status: Andrew's March 1, 2015 resignation; Andrew's June 18, 2015 attempt to rescind his March 1, 2015 resignation; and Bill's attempt to appoint Andrew as manager of ZFBH on November 9, 2015. Beginning with Andrew's March 1, 2015 resignation, the Court finds that it was effective in terminating Andrew's status as manager of ZFBH. It is undisputed that on March 1, 2015, Andrew provided written notice to all of ZFBH's then-members confirming that he was resigning from his role as manager of ZFBH because he was concerned about managerial compensation. Section 10.9 of the Operating Agreement is titled "Voluntary Withdrawal of a Manger" and provides the procedure for a manager of ZFBH to resign. While Andrew's resignation letter failed to denote that Andrew was resigning pursuant to section 10.9, this section clearly gives a manager the authority to resign. Andrew included in his resignation letter a representation that Bill, Steven, and Katie waived the 90-day notice requirement contained in section 10.9,[21] which indicates that Andrew was resigning pursuant to that section. Furthermore, it is undisputed that Andrew's resignation was effective, and

---

[21] Whether or not this waiver was valid is not important for purposes of the Court's analysis of Andrew's managerial status. If the waiver was valid, then Andrew's resignation was effective on March 1, 2015. If the waiver was invalid, then Andrew's resignation would have been effective on May 28, 2015. Either way, the resignation would have been effective before Andrew's attempt to rescind it on June 18, 2015.

nothing exists in the record to persuade the Court to find otherwise. Therefore, the Court concludes that Andrew effectively resigned from his role as manager of ZFBH on March 1, 2015.

Turning to Andrew's June 18, 2015 attempt to rescind his March 1 resignation, the Court finds that the rescission was ineffective and failed to restore Andrew's status as manager of ZFBH. It is undisputed that on June 18, 2015, Andrew attempted to rescind his March 1 resignation by sending a rescission letter to Larry, Bill, Michael, Robert, and Betty. However, the Operating Agreement fails to provide for a process by which a former manager can rescind his resignation. Furthermore, Nevada's limited liability company statute also fails to provide for such a process. In fact, Andrew fails to point to any legal basis that would support a finding that his purported rescission was proper and effective. Instead, Andrew conclusively states as fact in his brief that he rescinded his resignation and fails to even mention the purported rescission in his brief's argument and discussion of the law. For these reasons, the Court has no legal basis to find that Andrew effectively rescinded his March 1 resignation and, therefore, concludes that Andrew's June 18, 2015 letter failed to restore Andrew's status as manager.

Lastly, turning to Bill's November 9, 2015 attempt to appoint Andrew to manager pursuant to section 13.20(A), the Court determines that this was ineffective and, thus, failed to make Andrew a manager of ZFBH. It is undisputed that on November 9, 2015, before he resigned as manager of ZFBH and sold his membership interest in ZFBH to Andrew, Bill attempted to appoint Andrew to manager pursuant to section 13.20(A). However, while the parties agree that the plain language of section 13.20(A) is unambiguous, the parties dispute how the language should be interpreted, and thus dispute the legal consequences flowing from the purported appointment.

Andrew argues that because the Operating Agreement generally confers significant power onto the managers of ZFBH, the language of section 13.20(A) should be construed in the broadest

8

manner possible, giving a manager the authority to appoint additional managers without any vote by, or notice to, ZFBH members. In support of this argument, Andrew points to the broad managerial powers contained in the Operating Agreement. Andrew specifically cites to Article XII as an example of this broad managerial power because it provides that each member of ZFBH irrevocably "appoints the Manager as his true and lawful attorney-in-fact." Such a power may be broad, but the plain language of section 13.20(A) does *not* similarly grant broad managerial powers. Rather, as Michael argues, the correct interpretation of section 13.20(A) is that it is part of a streamlined process for clerical matters. Accordingly, the Court disagrees with Andrew's interpretation of section 13.20(A) and, instead agrees with Michael's interpretation.

Section 13.20 is titled "Amendment" and each subsection thereunder discusses the method by which the Operating Agreement may be amended. While an amendment made pursuant to section 13.20(B) requires a vote approving the amendment by "the Manager and Members owning at least two-thirds," section 13.20(A) does not contain a vote requirement. Rather, the manager, under 13.20(A), has unilateral authority to "reflect the addition or substitution of Members or the Manager." If Andrew's interpretation were to be adopted, then the members of ZFBH would need a 2/3 vote to simply change one word in the Operating Agreement, regardless of its significance, whereas the manager would be able to unilaterally add or appoint a new manager under the same section titled, "Amendment." The Court finds this would be an illogical and irrational result. Accordingly, the lack of a voting requirement under section 13.20(A) lends credence to the interpretation that this section was not meant to be an affirmative grant of broad powers; but rather, it was meant to be a simple process to handle a clerical duty. Furthermore, it makes no sense that such an important and broad grant of power to the manager would be confined to the very last section of the Operating Agreement under Article XIII, which is titled "Miscellaneous." Other

sections under Article XIII include, *inter alia*, section 13.8, titled "Validity," which provides that any provision held to be invalid will not render the entire agreement invalid; section 13.16, titled "Notice," which outlines the medium of notice under the Operating Agreement and when notice will be deemed to have been delivered; and section 13.3, titled "Annual Information," which requires ZFBH to furnish members all necessary tax information flowing from the operations of the company. In other words, these provisions provide processes for the general maintenance of both the Operating Agreement and ancillary administrative operations of ZFBH, and do not significantly affect the rights and obligations of managers and members – and certainly do not grant broad powers of authority to managers.

Nonetheless, the Court need not rely on the comprehensive scheme of the Operating Agreement to reach the correct interpretation of section 13.20(A) because the plain language of the section itself limits its grant of authority to a simple clerical task. As noted above, the parties agree that this provision is unambiguous, and the Court concurs. The plain language of the provision can be understood according to the usual and ordinary meaning of the words contained therein. Section 13.20(A) grants a manager the power to "amend the [Operating Agreement] to reflect the addition or substitution of Members or the Manager." "Reflect" is defined as to exhibit as a likeness or to manifest or make apparent. *Reflect*, MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-webster.com/dictionary/reflect (last visited Mar. 12, 2019). Thus, in order to reflect something, that thing must have already occurred. It follows that the power to amend is limited to *reflecting* changes in management that have already occurred.  In order for a manager to *reflect* the addition or substitution of a manager, the addition or substitution of a manager must have already come into existence, e.g., through a vote by ZFBH's members. Therefore, when section 13.20(A) grants a manager the power to amend the Operating Agreement

to *reflect* changes in management, those changes in management must have already been properly approved through the processes outlined in the Operating Agreement,[22] and the manager is simply amending the contract to add or substitute the names of those additional or substituted managers who were approved. Accordingly, the Court concludes that section 13.20(A) is a streamlined process for clerical matters, and rejects Andrew's argument that this section grants a manager unilateral authority to appoint a new manager.

As a result, the Court concludes that Bill's purported appointment of Andrew to manager pursuant to section 13.20(A) was ineffective and, therefore, Andrew is not a manager of ZFBH.[23] Bill, in his capacity as manager before he resigned, attempted to appoint Andrew to manager on November 9, 2015 pursuant to section 3.20(A). However, no such power to appoint a manager exists under section 13.20(A). Therefore, Bill was unable to effectively appoint Andrew to manager and Andrew failed to become manager on November 9, 2015, and has ceased to be a manager since his resignation on March 1, 2015. Consequently, the death of Betty on January 29, 2018 marked the death of the sole remaining manager of ZFBH.

Even though the Court finds that Andrew ceased to be a manager as of his March 1 resignation and that Betty's death marked the death of the sole remaining manager of ZFBH, the Court must deny Michael's request for dissolution under Count I because section 11.1(B) has still not been triggered.[24] The plain language of section 11.1(B) states that, "[t]he Company *shall* be dissolved and liquidated upon . . . the death . . . of the sole remaining Manager, *after the order of succession has been complied with*." (Emphasis supplied.) Section 11.1(B), therefore, contains

---

[22] Such as the process outlined in section 2.7, for example.
[23] Similarly, the Court finds that Robert's purported appointment to manager pursuant to section 13.20(A) in January 2014 was also ineffective, unquestionably leaving Betty as the sole remaining manager of ZFBH at the time of her death.
[24] And Michael does not assert any other basis for dissolution.

two condition precedents to the dissolution of ZFBH: first, the sole remaining manager of ZFBH must have died and, second, the order of managerial succession must have been complied with. The Court has found that the first condition precedent has been satisfied; however, the Court has no basis to find that the order of succession has been complied with between the time of Betty's death and the instant litigation. Michael fails to provide the Court with any evidence that an order of succession has been complied with, and fails to offer any Statement of Undisputed Material Fact addressing the order of succession. Additionally, Michael fails to address, or even mention, the order of succession in his Motion (outside of directly quoting section 11.1(B)). [25] Accordingly, the Court must deny Michael's request for dissolution pursuant to Nev. Rev. Stat. Ann. § 86.491(1)(b), because Michael fails to prove a necessary condition precedent under the Operating Agreement to the relief he is seeking.

Moreover, under Nevada's Limited Liability Company Act, whether or not a Court must order judicial dissolution rests in the Court's discretion. *See* Nev. Rev. Stat. Ann. § 86.495(1) ("Upon application by or for a member, the district court *may* decree dissolution of a limited-liability company . . . ." (emphasis added)); *see also* Nev. Rev. Stat. Ann. § 86.495(3) ("If a limited-liability company is required to be dissolved pursuant to NRS 86.491 . . . upon application by or for the Secretary of State or any person who is adversely affected by the failure of the company to dissolve, the district court *may* decree dissolution of the company" (emphasis added)). Here, even if Michael had provided the Court with the factual foundation necessary to find that the order of succession under section 11.1(B) had been complied with, the Court would still decline to grant Michael the relief he is seeking (dissolution and liquidation) for the following reasons.

---

[25] At oral argument Michael's counsel argued there is no order of succession, and therefore section 11.1(B) is fully satisfied. However, Michael failed to establish a factual record to support his argument, and even if he had established the necessary factual record, the Court finds his argument to be without merit.

First, under section 8.4(B) of the Operating Agreement Michael is prohibited from petitioning the Court to dissolve ZFBH. Section 8.4(B) states "[n]o Member shall have the right to . . . petition for dissolution, or require petition of, or compel any sale or appraisal of the assets of [ZFBH]." Andrew argues that, pursuant to section 8.4(B), Michael is precluded from seeking to dissolve ZFBH. Michael admits to the plain language of section 8.4(B), (Pl.'s Reply to Defs.' Add'l S.M.F. ¶ 36), agrees with Andrew that the Operating Agreement is unambiguous, and fails to raise any serious argument or alternative interpretation in opposition to Andrew's contention that this provision of the Operating Agreement precludes Michael from petitioning the Court to dissolve ZFBH.[26]

The Court agrees with the parties that section 8.4(B) is unambiguous and acknowledges that no competing interpretations have been offered. The plain language of section 8.4(B) prohibits members of ZFBH from petitioning a court to dissolve ZFBH. Although section 8.4(B) does not and cannot limit the Court's authority to provide relief, section 8.4(B) does inform the Court's discretion in this matter. Since Michael is a member of ZFBH and Count I includes a request to dissolve ZFBH, the Court would decline to order the dissolution of ZFBH even if section 11.1(B) were satisfied.

Second, it is unclear whether this Court has the authority to dissolve a foreign business entity, and the Law Court appears not have addressed the question. In the absence of Law Court precedent, this Court is persuaded by cases from other jurisdictions holding that the courts of one state lack the authority (or should decline to exercise the authority) to order the dissolution of a business entity created by another state. *See, e.g., Young v. JCR Petroleum*, 423 S.E.2d 889, 892 (W. Va. 1992) (due to the Full Faith and Credit Clause, courts in one state cannot order the

---

[26] In a brief footnote in his reply brief, Michael unsuccessfully suggests there is a material distinction between "is dissolved" and "must be dissolved."

dissolution of a foreign business entity); *see also In re Raharney Capital, LLC v. Capital Stack LLC*, 138 A.D.3d 83, 86-87 (N.Y. App. Div. 2016) ("Because a business entity is a creature of state law, the state under whose law the entity was created should be the place that determines whether its existence should be terminated."); *Azure Dolphin, LLC v. Barton*, 2017 NCBC LEXIS 90, at *15-17 (N.C. Super. Ct. Oct. 2, 2017) (holding that the court lacked jurisdiction over an action seeking to dissolve foreign business entities because there was no affirmative statutory grant of jurisdiction by the North Carolina General Assembly); *Durina v. Filtroil, Inc.*, No. 07 CV 45, 2008 Ohio App. LEXIS 4036, at *32 (Sept. 18, 2008) ("The remedy that Appellants seek, a judicial dissolution of a Nevada limited-liability company by an Ohio court, is not permissible in Ohio, and the trial court was correct in determining that it did not have jurisdiction to dissolve the company."); *Valone v. Valone*, 2010 Va. Cir. LEXIS 16, at *50 (Jan. 20, 2010) (agreeing with the court in *Young v. JCR Petroleum* that this is an issue of Full Faith and Credit and dismissing action seeking to dissolve a foreign limited partnership). In this case, it is undisputed that ZFBH was duly organized and retains its existence under Nevada law. Accordingly, even if the requirements of 11.1(B) were satisfied, and even if the Operating Agreement did not preclude Michael from seeking dissolution, the Court would still decline to order the dissolution of ZFBH.

II.     Count II – Plaintiff's Request for Accounting by Andrew and Order Requiring Disgorgement of Unauthorized Income Received

Count II requests an accounting by Andrew and an order requiring disgorgement of unauthorized income that Andrew received while operating in an unauthorized role as manager of ZFBH. Michael argues that Andrew received income related to the services he performed while acting in an unauthorized manner as manager of ZFBH and, therefore, should have to account for this unauthorized income and be disgorged of the benefit he received therefrom. Andrew denies this allegation and maintains that he was authorized to receive this income because he is the rightful

14

manager of ZFBH. However, the Court does not reach the substantive arguments presented by either side because Michael has failed to establish standing to bring this claim. Therefore, the Court must deny Michael's motion for summary judgment on Count II and enter summary judgment in favor of Andrew. *See* M.R. Civ. P. 56(c) ("Summary judgment, when appropriate, may be rendered against the moving party."

Every plaintiff "must establish its standing to sue, no matter the causes of action asserted." *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 7, 96 A.3d 700. Even though there is "no set formula for determining standing, a court may limit access to the courts to those best suited to assert a particular claim." *Lindemann v. Comm'n on Gov'tl Ethics and Election Practices*, 2008 ME 187, ¶ 8, 961 A.2d 538 (quotations omitted). The facts relied upon in Count II demonstrate that the party most suited to bring this claim against Andrew is ZFBH. The unauthorized services were rendered by Andrew on behalf of ZFBH, and the money paid to Andrew for such services was the property of ZFBH. ZFBH, being a limited liability company, maintains a separate legal identity from its members. Therefore, because ZFBH was the party that incurred the alleged injury under Count II, ZFBH is the party best suited to bring this claim.

Furthermore, even if Michael claimed that Count II was a derivative action brought by him on ZFBH's behalf, he has failed to meet the statutory requirements set forth under Nev. Rev. Stat. Ann. § 86.483. Under § 86.483, a member can bring an action "in the right of a limited-liability company to recover a judgment in its favor if managers or members with the authority to do so have refused to bring the action or if an effort to cause those managers or members to bring the action is not likely to succeed." Nev. Rev. Stat. Ann. § 86.483. Michael has failed to establish a factual record that satisfies these criteria. Michael does not provide any facts establishing any refusal to bring this action or any facts establishing that an effort by him to cause those authorized

15

to bring this claim would be futile. Therefore, because Michael lacks standing to bring Count II, the Court denies the motion for summary judgment on Count II and enters summary judgment in favor of Andrew on Count II.

III.    Counterclaims

In response to the Complaint, Andrew filed the Counterclaim on behalf of himself and purportedly on behalf of ZFBH. Each count of the Counterclaim arises out of the same series of events discussed throughout this order, as well as alleged non-payments by Michael which allegedly led to him being unjustly enriched. Under section 7.2(F) of the Operating Agreement, however, only the manager of ZFBH is authorized to bring claims on behalf of ZFBH. As discussed above, this Court has declared that Andrew is not a manager. As a result, Andrew has no authority to bring the Counterclaim on behalf of ZFBH.[27]   Accordingly, Michael is granted summary judgment on all counts of the Counterclaim as to ZFBH.

That leaves analysis of the Counterclaim as brought by Andrew in his own capacity. Counterclaim Count I seeks a declaration that Andrew is a manager, along with a declaration regarding several other aspects of ZFBH's internal management. This Court has declared that Andrew is not a manager, and therefore Michael is granted partial summary judgment on Counterclaim Count I. To the extent Counterclaim Count I seeks a declaration regarding other matters, Counterclaim Count I survives summary judgment.

Counterclaim Counts II and III allege a series of injuries sustained by ZFBH as a result of Michael's actions. As with Count II of the Complaint, ZFBH is thus the party most suited to bring Counterclaim Counts II and III.  Hence, Andrew has no standing to bring Counterclaim Counts II and III on his own behalf.  Conceptually, Andrew has standing to bring Counts II and III of the

---

[27] Moreover, Andrew does not have the authority as manager to hire counsel to represent ZFBH in this matter.

Counterclaim as a derivative action on behalf of ZFBH. However, like Michael with regard to Complain Count II, Andrew fails to provide facts establishing that he meets the criteria set forth in Nev. Rev. Stat. Ann. § 86.483, which provides for derivative actions by members of a limited liability company under Nevada law. As a result, Andrew lacks standing to bring Counterclaim Counts II and III, and the Court grants Michael's motion for summary judgment on Counterclaim Counts II and III as to Andrew.

## CONCLUSION

For all the foregoing reasons, Michael's motion for summary judgment is granted in part and denied in part. With regard to Complaint Count I, the Court declares that Andrew is not a manager of ZFBH, but declines to dissolve ZFBH on the basis of section 11.1(B) of the Operating Agreement. The Court grants Andrew summary judgment as to Complaint Count II. The Court grants Michael summary judgment on all counts of the Counterclaim as to ZFBH. As to Andrew, the Court grants Michael partial summary judgment as to Counterclaim Count I by declaring that Andrew is not a manager of ZFBH, but otherwise denies summary judgment as to Andrew on Counterclaim Count I. The Court grants Michael summary judgment on Counterclaim Counts II and III as to Andrew.

So Ordered.

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.


Dated: April 2, 2019                           _____/s_____
                                                  Michael A. Duddy
                                                  Judge, Business and Consumer Docket